723 A.2d 917

**Douglas C. TEDERICK**

v.

**STATE of Maryland.**

**No. 508, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

Feb. 8, 1999.

---

Mark Colvin, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

M. Jennifer Landis, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and M. Kenneth Long, Jr., State's Atty. for Washington County, Hagerstown, on the brief), for appellee.

Submitted before MOYLAN, BYRNES and JOHN J. BISHOP, Jr. (Ret., Specially Assigned), JJ.

MOYLAN, Judge.

The appellant, Douglas C. Tederick, poses two questions with respect to his convictions in the Circuit Court for Washington County of several traffic-related offenses. Those questions are:

1. Did the trial court err in imposing separate sentences for driving while his driver's license was suspended and for driving while it was revoked?

2. Did the docket entries fail to make clear that the appellant was found not guilty of the unlawful taking of a motor vehicle, theft over $300, and driving while intoxicated?

After being convicted at the conclusion of a court trial of, among other offenses, 1) driving while his driver's license was revoked and 2) driving while it was suspended, the appellant was sentenced, *inter alia,* to one year of imprisonment for the former offense and one year to be served concurrently for the latter offense. The appellant now complains that the sentence for driving while suspended should have been merged into the sentence for driving while revoked. We agree that the appellant should not have been convicted twice but we do so for reasons different than those urged by the appellant.[1]

---

1. A brief procedural history of this opinion may throw some light on why we are vacating one of the two convictions for a reason other than that argued by the appellant when this case was submitted to us on brief on November 18, 1998. In his appellate brief, the appellant

**40**

 ■ At the threshold, the State claims that the appellant's first contention has not been preserved for appellate review. It points out that at the time of sentencing, the appellant made no argument with respect to the merger of the two offenses now at issue and, indeed, that the appellant did not raise this issue with the trial judge even after the sentencing. On this issue, however, we are guided by *Lamb v. State*, 93 Md.App. 422, 427, 613 A.2d 402 (1992):

> Although the appellant made no timely objection to the nonmerger of convictions at the time of sentencing, it is clear that the issue of nonmerger is reviewable by an appellate court even absent preservation of the issue by the appellant.

*Lamb*, in turn, relied on *Campbell v. State*, 65 Md.App. 498, 510, 501 A.2d 111 (1985), wherein Judge Rosalyn Bell held very clearly:

------

argued for a merger of one conviction into the other based on the so-called "rule of lenity" and the theory of "fundamental fairness" set forth by the Court of Appeals in *Monoker v. State*, 321 Md. 214, 223–24, 582 A.2d 525 (1990). In an unpublished opinion filed on December 2, 1998, we agreed with the appellant that one of the convictions should have merged into the other but we relied on a related but more traditional double jeopardy rationale. In that unpublished opinion, we treated the charge of driving on a suspended license—to wit, driving while the license was invalidated for a briefer time—as a lesser included offense within the greater inclusive offense of driving on a revoked license—to wit, of driving while the license was invalidated for a longer time.

 Six days later, on December 8, 1998, this Court filed an unpublished opinion in the unrelated case of *Jones v. State*, No. 503, Sept. Term, 1998, in which we dealt with the same issue but resolved it in a diametrically different way. On December 18, 1998, the State, as the original appellee in our case, filed a Motion for Reconsideration, pointing out the inconsistency to us and implicitly asking for clarification.

 In an effort to resolve the conflict and to provide clear guidance for the future, we elected to grant the Motion for Reconsideration, to withdraw the earlier unpublished opinion of December 2, 1998, and to substitute this amended opinion for it. In rethinking the issue for publication, moreover, we concluded that, although the result is not significantly different, the rationale now offered is more correct than the one we advanced in the unpublished opinion of December 2, 1998.

The Court of Appeals recently held in *Walczak v. State*, 302 Md. 422, 427, 488 A.2d 949 (1985), that "when the trial court has allegedly imposed a sentence not permitted by law, the issue should ordinarily be reviewed on direct appeal even if no objection was made in the trial court." The Court relied on the provisions of Rule 4-345(a), allowing an illegal sentence to be corrected at any time, and the fact that a defendant could have an impermissible sentence set aside, regardless of objection at trial, on post-conviction review. The question for us is whether the failure to merge two offenses for sentencing purposes where the sentences are imposed concurrently, may result in a sentence "not permitted by law." We hold that it does.

 Turning to the merits, we conclude that the appellant was convicted and sentenced twice for the same offense in contravention of both the Double Jeopardy Clause of the United States Constitution and Maryland's common law against double jeopardy. This is one of those situations where the pertinent provisions of the Transportation Article are so prolix and where the State is focusing so microscopically on the minutiae of those provisions that the sheer clutter of detail threatens to obscure our vision of the bigger picture. The over-arching first principle is that there is no right to drive an automobile on the roads and highways of the State of Maryland. One is permitted to engage in that activity only when expressly licensed or otherwise privileged to do so. To drive on our highways when one is not licensed to do so is a crime.

Before invoking *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and comparing elements of ostensibly different offenses under the "required elements" test, therefore, it behooves us to step back, to take a deep breath, and to ask whether any of that is even necessary. What we should ask, rather, is what is the fundamental criminal act the appellant is charged with having committed. It is getting behind the wheel of an automobile, turning on the ignition, and driving onto the roadways of Maryland when one is not licensed to do so. There may be any number of reasons why one is not licensed to do so, but it is that lack of the

license that is the gravamen, the indispensable element, of the offense and not the reason for the lack of a license.

The driving infraction itself consisted of a single incident that occurred on the evening of November 2, 1997. A West Virginia State Trooper was responding to an emergency call in Falling Waters, Berkeley County, West Virginia. The call had nothing to do with the appellant. In the course of responding to the call, the West Virginia Trooper activated his emergency lights in order to get around a van being driven by the appellant. Instead of pulling over to let the trooper pass, the appellant speeded up and continued northbound on Route 11 towards the Potomac River Bridge and the Maryland border. The West Virginia Trooper pursued the appellant until he reached the Maryland line.

As the appellant crossed the Potomac River Bridge into Williamsport, Maryland, Deputy John Ralston of the Washington County Sheriff's Department picked up the pursuit. At one point, the appellant's speed reached 84 miles per hour. The appellant failed to stop at several stop signs and passed vehicles when he was not permitted to do so. When the appellant's van finally came to a stop, the appellant fled on foot but was quickly apprehended. Deputy Ralston detected "a pretty strong" odor of alcohol on the appellant and discovered a quart of "partially-drank" beer in the van. When asked why he did not stop, the appellant stated that he knew his license to drive had been suspended or revoked. He further noted that he knew he was going to jail so he wanted to finish the quart of beer.

At the appellant's trial in Washington County, the State at the conclusion of its case confessed not guilty to the three charges of 1) the unlawful taking of a motor vehicle, 2) theft of over $300, and 3) driving while intoxicated. The defendant was found not guilty of driving under the influence. He was convicted, however, of 1) fleeing and eluding, 2) driving after his license had been suspended, 3) driving after his license had been revoked, 4) reckless driving, 5) failing to stop at a stop sign, 6) speeding, and 7) consuming alcohol while driving. He

was sentenced to one year for fleeing and eluding and to one year, to be served consecutively, for driving after his license had been revoked. He received an additional one-year sentence for driving after his license had been suspended, to be served concurrently with the sentence for driving on a revoked license. "General Judgments of Guilt" were imposed for the remaining four traffic offenses. Our present concern is only with the propriety of separate convictions for 1) driving after the driver's license had been revoked and 2) driving while the driver's license was suspended.

For our purposes, it is Md.Code (Repl.Vol.1998), § 16–303 of the Transportation Article, that makes it unlawful for a person to "drive a motor vehicle on any highway" while "his license or privilege to drive" is, for any number of reasons, invalid. Section 16–303, in subsections (a) through (g), spells out seven different modalities whereby one might be without a "license or privilege to drive." Those modalities are a) where a license has been refused by this state or any other state, b) where a license has been canceled by Maryland, c) where a license has been suspended by Maryland, d) where a license has been revoked by Maryland, e) where a license has been canceled by some other state, f) where a license has been suspended by some other state, and g) where a license has been revoked by some other state. For driving without a valid license pursuant to any of those seven modalities, the penalty is provided by § 27–101(h) and is, for a first offender, a fine of up to $1,000 and imprisonment of up to one year.[2]

In the Transportation Article, Title 27 establishes the penalties for various violations of the Maryland Vehicle Law and also makes various statutory provisions for the disposition of fines and forfeitures. It is § 27–101 that establishes the penalties for those violations that are misdemeanors. Indeed, § 27–101(a) provides:

---

2. Section 16–303 also provides, in subsections (h) and (i), for two other less egregious forms of driving without a valid license, which entail lesser punishments.

It is a misdemeanor for any person to violate any of the provisions of the Maryland Vehicle Law unless the violation:

(1) Is declared to be a felony ... or

(2) Is punishable by a civil penalty ...

Other provisions deal with those violations that 1) are felonies or 2) are punishable by a civil penalty.

Section 27–101, in its various subsections, establishes an escalating set of penalties for various groups of infractions of the Motor Vehicle Law. It is subsection (h) that concerns us here. It provides:

*Any person who is convicted of a violation of any of the provisions of* § 15–502(a) *of this article ("License required"),* § 16–303(a), (b), (c), (d), (e), (f), or (g) *of this article ("Driving while license is canceled, suspended, refused, or revoked"),* § 17–707 *of this article ("Prohibitions"), or* § 17–110 *of this article ("Providing false evidence of required security") is subject to:*

(1) *For a first offense, a fine of not more than $1,000, or imprisonment for not more than 1 year, or both;* and

(2) For any subsequent offense, a fine of not more than $1,000, or imprisonment for not more than 2 years, or both.

(Emphasis supplied).

It is clear that the broad purpose of § 27–101 is to establish the basic penalties for the numerous misdemeanors created to cover numerous violations of the Maryland Vehicle Law. It does not presume to address the issue now before us, which is whether § 16–303 establishes various ways in which an individual may be guilty of the single violation of driving on an invalidated license or whether it establishes a variety of such driving violations that may be committed simultaneously and punished separately. The language is nonetheless compatible with our holding that § 16–303(a) through (g) establishes simply a number of different ways in which a single crime may be committed rather than separate crimes that may be committed simultaneously.

The penalty provision refers to "§ 16–303(a), (b), (c), (d), (e), or (g)" particularly rather than simply to "§ 16–303" blanketly

for the obvious purpose of distinguishing a more serious case of driving on an invalidated license (by any of those seven modalities) from a less serious case of driving on an invalidated license pursuant to § 16–303(h) or (i). That less egregious violation by either of those two modalities incurs a lesser penalty. The very phrasing, moreover, of the parenthetical summary of the sentencing provision—("Driving while license canceled, suspended, refused, or revoked")—confirms our conclusion that the penalty section refers to a single driving infraction after the driving privilege has been terminated in any of seven alternative ways.

A close examination of § 16–303(a) through (g) itself further confirms our feeling in this regard. Each of those seven subsections begins with precisely the same words: "A person may not drive a motor vehicle on any highway or on any property specified in § 21–101.1 of this Article while his license . . ." The subsections then diverge only to describe adjectivally the particular manner in which the license was invalidated, to wit, by having been refused (a), canceled (b), suspended (c), revoked (d), canceled by any other state (e), suspended by any other state (f), or revoked by any other state (g). The common denominator to all of the forms the offense may take is that a defendant drove a motor vehicle on a Maryland highway after his privilege to drive had been invalidated. The unit of prosecution is the act of driving.

In this case, the appellant had had his driver's license revoked in December of 1990 because of an accumulation of points and thereby qualified for a violation of § 16–303 by virtue of subsection (d). In June of 1997, the appellant had also had his license to drive suspended for non-compliance with the terms of his Child Support Order and thereby qualified for a violation of § 16–303 by virtue of subsection (c). All of the subsections, (a) through (g), however, simply spell out different ways in which a § 16–303 violation may be perpetrated. They do not spell out separate crimes.[3]

---

3. We are not even tempted to try to grapple with the intimidating philosophical question of how one can suspend something that has

**46**

The original reason or reasons why the operator's license is now suspended or revoked is not an element of the present offense. It is simply history. The status of invalidation of the privilege to drive itself, temporary or permanent, already constitutes the full and sufficient sanction for whatever anterior misconduct may have led to that invalidation. Once the driving privilege has been invalidated, the earlier incident is a *fait accompli.* It was never contemplated that additional punishment for the possibly new and posterior crime of driving after one's driving privilege has been invalidated should be considered part of the possible sanction for the earlier misconduct. After the earlier administrative action, the new *status quo ante* consists simply of an individual whose driving privileges have been invalidated, by virtue of having been refused, canceled, revoked, or suspended in this or any other state. He then either refrains from driving or violates the law by driving while not privileged to do so.

As the State points out, a person might be subjected to a § 16–303(c) suspension of a license for a number of different reasons. Even if, however, six different judges in six different courtrooms independently suspended an individual's privilege to drive for six different reasons and that individual then had the effrontery to get behind the wheel and drive, that individual would not be guilty of six separate crimes of driving on a suspended license. He would be guilty of a single crime of driving while his drivers license was suspended, notwithstanding that it had been suspended six different times for six different reasons.

Under subsection (g), a person is guilty of a § 16–303 violation if he drives a motor vehicle on a highway in Maryland while his driver's license "issued by any other state is revoked." If, hypothetically, an individual drove a motor vehicle in Maryland after having had licenses issued and then revoked by all 49 of the other states, it is clear that the

---

earlier been revoked. When the privilege to drive is revoked, it thereby becomes non-existent. How, then, can one subsequently suspend nothing?

Maryland violation would be in the singular and not multiplied by 49.

By way of analogy, an individual, pursuant to Art. 27, § 410, could commit first-degree felony-murder by any of nine separate consummated modalities (not counting nine additional inchoate modalities or attempts). Even if a creative killer could perpetrate the felony-murder of the century by combining all nine modalities at once, he would still qualify for a single felony-murder and not for nine. Pursuant to Art. 27, § 342, one could perpetrate a theft of property by any of four separate modalities. Even if the theft embraced all four modalities at once, it would still be a single theft and not four.

When a statute provides that a crime may be perpetrated in a number of different ways, that crime, in the singular, has occurred regardless of 1) whether any one of those prescribed modalities has been proved, 2) whether two or more of them in combination have been proved, or 3) whether all of them at once have been proved. The appellant in this case was guilty of a single act of driving on the highways of Maryland after his driving privilege had been invalidated. That it was invalidated for more than one reason is superfluous. Like Elizabeth Barrett Browning, we may "count the ways"; but even a multiplicity of ways still yields a single and indivisible phenomenon. The appellant's driver's license may have been twice-cursed, but the appellant will not be.

We will vacate the second conviction and deem it merged into the first not because it is a lesser included offense but because it is redundant.

■ The appellant also complains that the docket entries in the circuit court failed to reflect that he was acquitted of the unlawful taking of a motor vehicle, theft over $300, and driving while intoxicated. At the conclusion of the State's case, the prosecutor informed the court that he would "confess not guilty" to the aforementioned offenses. Accordingly, the docket entries read:

48

State confesses NOT GUILTY CT # 1 Unlawful Taking of M/V, CT # 2 Theft and CT # 3 Driving While Intoxi-cate[d][.]

At the outset, we are at a loss as to how the appellant's argument is the basis for an appellate issue. While any possible confusion the appellant fears may be the proper subject of a letter to the Clerk of the Circuit Court requesting a change in the wording of the docket entries, it is not of appellate concern. In any event, we see no flaw in the docket entries, as they adequately reflect a finding of "not guilty" with respect to the three charges.

*JUDGMENT FOR DRIVING WHILE LICENSE WAS REVOKED AFFIRMED; JUDGMENT FOR DRIVING WHILE LICENSE IS SUSPENDED MERGED INTO JUDGMENT OF CONVICTION FOR DRIVING AFTER LICENSE HAS BEEN REVOKED; COSTS TO BE PAID BY WASHINGTON COUNTY.*