742 A.2d 493

**Jerry Cornelius JONES**

v.

**STATE of Maryland.**

**State of Maryland**

v.

**Douglas C. Tederick.**

**Nos. 12, 29, Sept. Term, 1999.**

Court of Appeals of Maryland.

Dec. 15, 1999.

142

144

Geraldine K. Sweeney, Assistant Public Defender (Peter F. Rose, Assistant Public Defender and Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner, in No. 12 Sept. Term, 1999. '

Celia Anderson Davis, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, on brief), Baltimore, for respondent, in No. 12 Sept. Term, 1999.

M. Jennifer Landis, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, on brief), Baltimore, for petitioner, in No. 29 Sept. Term, 1999.

Geraldine K. Sweeney, Assistant Public Defender (Peter F. Rose, Assistant Public Defender and Stephen E. Harris, Public Defender, on brief), Baltimore, for respondent, in No. 29 Sept. Term, 1999.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL, and ROBERT L. KARWACKI (retired, specially assigned), JJ.

RAKER, Judge.

The common question we must decide in these two consolidated cases is whether multiple punishments may be imposed for the single criminal act of driving a motor vehicle while the operator's driving privileges were both suspended and revoked in violation of Maryland Code (1977, 1999 Repl.Vol., 1999 Supp.) § 16–303 of the Transportation Article [1]. In *Jones v.*

---

**1.** Unless otherwise indicated, all subsequent statutory references herein are to Maryland Code (1977, 1999 Repl.Vol., 1999 Supp.) Transportation Article.

*State,* the Court of Special Appeals affirmed the judgments of the Circuit Court for Harford County, thereby answering the question in the affirmative. In *State v. Tederick,* the Court of Special Appeals reversed the Circuit Court for Washington County, thereby answering the same question in the negative. We granted the petitions for certiorari in both cases and consolidated them for review to resolve the issue. In *Tederick,* we shall affirm; in *Jones,* we shall reverse.

## I.

### A. *Jones v. State,* No. 12.

Petitioner Jerry Cornelius Jones was charged in the District Court of Maryland, sitting in Harford County, with multiple traffic violations arising from a single incident of driving while his privilege to drive was suspended in violation of § 16–303(c) and revoked in violation of § 16–303(d). He was sentenced on count three, attempting to elude police by willfully failing to stop a vehicle when signaled to do so by an official police vehicle, to a term of imprisonment of one year, all but six months suspended; on count four, exceeding the speed limit, a fine of $500, all suspended; on count seven, driving on a suspended license, to a term of imprisonment of one year, consecutive to count three; on count eight, driving on a revoked license, to a term of imprisonment of one year, suspended, consecutive to counts three and seven; on count nine, fleeing police on foot, to a term of imprisonment of one year, suspended, consecutive to counts three, seven and eight; and on count ten, driving without a license, to a term of imprisonment of one year, suspended, consecutive to counts three, seven, eight and nine.[2] The court placed Jones on probation for the suspended portions of the sentences.

---

2. It does not appear from this record that Jones, a Maryland resident, ever had a driver's license issued by any State. He fell within no exception to the requirement of a driver's license, and therefore at no time was he privileged to drive in this State. There is no question that he was properly convicted of driving without a license. He does not argue, however, and therefore we do not consider, how a person can be

The events which led to the suspension and revocation of Petitioner's driving privileges in Maryland are as follows. At age 16, Jones was convicted of attempting to drive on a highway without a license. At age 17, he was convicted for driving on a highway without a license. He did not pay the fine imposed by the District Court for that offense and the Motor Vehicle Administration (hereinafter MVA) suspended his privilege to drive for failure to pay the fine. *See* § 27–103(a)(2). At age 18, he was convicted of driving while his privilege to drive was suspended, in violation of § 16–303(h). As a result of these convictions, he had accumulated a total of 13 points within a two-year period; pursuant to § 16–404(a)(3)(ii), on May 30, 1997, the MVA revoked his privilege to drive. Consequently, on August 12, 1997, the date of the offense in this case, Jones's privilege to operate a motor vehicle in this State was both suspended and revoked.

On August 12, 1997, Jones was operating a motor vehicle on the public roads in Harford County. The police attempted to stop Jones's vehicle to investigate what appeared to them to be a faulty braking mechanism. Jones stopped the car at the side of the road, but immediately sped away. He stopped the car a minute later, and then took off on foot. The officer caught up with him, and determined that Jones had no license to drive in the State of Maryland, and that his privilege to drive was also suspended and revoked. The officer issued citations for attempting to elude a police officer by failing to stop the vehicle, exceeding the permissible maximum speed limit, negligent driving, reckless driving, attempting to elude a police officer, driving while one's privilege is suspended, driving while one's privilege is revoked, and driving without a license. Jones prayed a jury trial and the cases were transferred from the District Court to the circuit court. He was convicted on all counts.

Jones noted a timely appeal to the Court of Special Appeals. Before that court, he argued, *inter alia*, that the trial court

---

convicted criminally for the offense of driving while his non-existent privilege to do so was in a state of suspension or revocation.

erred by imposing separate convictions and separate sentences for driving without a license or privilege to drive, driving while one's license or privilege to drive is revoked, and driving while one's privilege to drive is suspended. His primary argument was that his convictions for driving suspended and driving revoked should merge under the required evidence test—the driving while suspended being the lesser included offense of driving while revoked. He reasoned that suspension is the temporary counterpart to revocation, the permanent measure. Because the permanent measure necessarily included the temporary measure, driving while suspended is a lesser included offense of driving while revoked. Thus, the legislature must have intended that the two restrictions be treated as one. In the alternative, he argued the rule of lenity.

The Court of Special Appeals rejected his arguments and affirmed the judgments. The court noted that "suspend" is defined in the Transportation Article as "to withdraw temporarily, by formal action of the Administration, an individual's license to drive a motor vehicle on highways in this State" for a period specifically designated by the Administration. *See* § 11–164. "Revoke," as defined in the Transportation Article, means "to terminate, by formal action of the Administration, an individual's license to drive a motor vehicle on highways in this State." *See* § 11–150. Nonetheless, because Jones's suspension and revocation restrictions were each imposed for distinct reasons, *i.e.*, suspension for failure to pay District Court fines, and revocation for point accumulation, the court held that they are each different statutory offenses. The court determined that the two charges, that is, those leading to the license restrictions, did not arise from the same criminal act, and therefore it was proper for the trial court to maintain separate convictions.

As for the multiple punishments, the Court of Special Appeals rejected Jones's lenity argument. In doing so, the court focused on the nature of the traffic violation that led to the suspension and the revocation and noted that there are certain instances, as in the present case, where one's suspension and revocation could result from distinct and unrelated

conduct. On the other hand, there may also be circumstances in which the behavior leading to one's suspension might also result in revocation. The court concluded that

[a]s a result, no single conclusion may be established regarding whether the legislature intended that the convictions for these two criminal acts merge. Rather, it seems that the proper approach is to determine the merger question on a case-by-case basis, reviewing the circumstances and underlying reasons for each driving restriction and then evaluating whether maintaining distinct convictions for each infringes upon one's right against double jeopardy.

The court held that because the conduct leading to Jones's suspension is distinct from the action resulting in his revocation, the rule of lenity does not require merger of the two offenses. Accordingly, it was not plain error for the trial court to maintain separate convictions and sentences for the two offenses.

## B. *State v. Tederick*, No. 29

Respondent Douglas C. Tederick was convicted in the Circuit Court for Washington County of driving while his license was revoked, driving while his license was suspended, fleeing and eluding a police officer, driving through a red signal, negligent driving, speeding, and consuming alcohol while driving. The court sentenced him on the driving while revoked charge to a term of imprisonment of one year, consecutive to the one-year sentence the court imposed for the fleeing and eluding conviction. On the driving while suspended charge, the court sentenced Tederick to a term of incarceration of one year, to be served concurrently with the sentence imposed on the driving while revoked charge.

The events which led to Tederick's suspension and revocation are as follows. Tederick's license was revoked in December of 1990 due to accumulation of points. His privilege to drive was suspended in June of 1997 for non-compliance with

the terms of his child support order. *See* § 16–203(b).[3]

On November 2, 1997, Tederick was driving a motor vehicle in West Virginia when a West Virginia state trooper, responding to an unrelated emergency call, engaged his emergency lights in an attempt merely to pass Tederick. Instead of pulling over, Tederick sped up, and as a result, the trooper pursued Tederick's vehicle. Tederick drove into Maryland, where he was stopped by deputies of the Washington County Sheriff's Department and placed under arrest. Tederick was charged by citation and he prayed a jury trial in the District Court. The cases were transferred to the Circuit Court for Washington County, where he was convicted of fleeing and eluding, driving through a red signal, negligent driving, driving while suspended, driving while revoked, speeding and consuming alcohol while driving.

Tederick noted a timely appeal to the Court of Special Appeals. In an unreported opinion, the court reversed. Tederick argued that the trial court erred in imposing separate sentences for driving while his license was suspended and driving while it was revoked. The court held that driving while suspended is a lesser included offense of driving while revoked; thus, the offenses should have merged. The court reasoned that Tederick's offense was simply driving an automobile when not licensed or privileged to do so, and that the original violations that led either to the revocation of a license or the suspension of a license are no longer material comparative elements. The court merged the driving while suspended

---

3. In 1995, the Legislature enacted § 16–203 ("Suspension and restriction for child support arrearages"). The statute provides that when an obligor is 60 days or more out of compliance with the most recent court order in making child support payments, the Motor Vehicle Administration shall suspend the obligor's license or privilege to drive in the State of Maryland and may issue a work-restricted license or privilege to drive. *See* § 16–203(b)(1) and (2). The obligor's license or privilege shall be reinstated if the Administration receives a court order to reinstate the license or privilege to drive or the Child Support Enforcement Administration notifies the Administration that the individual is not in arrears in making child support payments, has paid the support in full, or the obligor has demonstrated good faith by paying the ordered amount of support for 6 consecutive months.

into the judgment of conviction for driving after license has been revoked.

The State filed a Motion for Reconsideration, advising the court that the *Tederick* opinion was contrary to the unreported opinion in *Jones v. State*, No. 503, Sept. Term, 1998, (Md.Ct.Spec.App. Dec. 8, 1998), by a different panel of the Court of Special Appeals. The court granted the State's motion, recalled the earlier *Tederick* opinion and substituted in its place *Tederick v. State*, 125 Md.App. 37, 723 A.2d 917 (1999). In a footnote, the court allowed that "[i]n rethinking the issue for publication, ... we concluded that ... the rationale now offered is more correct than the one we advanced in the unpublished opinion of December, 2, 1998." *Id.* at 39–40 n. 1, 723 A.2d at 918 n. 1.

The Court of Special Appeals agreed with Tederick that he should not have been convicted twice and vacated one of the two convictions, albeit for a reason other than that argued by Tederick. The court concluded that Tederick was convicted and sentenced twice for the same offense in violation of both the Double Jeopardy Clause of the United States Constitution as well as Maryland's common law against double jeopardy, *id.* at 41, 723 A.2d at 919, not because one offense is a lesser included offense of the other but because driving while suspended is "redundant."[4] The essence of the court's conclusion was that § 16–303(a) through (g) creates one offense making it unlawful to drive while one's license or privilege is suspended

---

4. Although this Court has never recognized a theory of merger on the grounds of redundancy, we note that the concept has been expressed in other jurisdictions. *See Lane v. United States*, 737 A.2d 541, 544 (D.C.1999) ("vacat[ing] as redundant" one of two convictions for murder of a single victim); *State v. Moses*, 128 N.H. 617, 517 A.2d 839, 841 (1986) (noting possibility that prosecution for a lesser included and greater offense would "at least be redundant"). *See also Albrecht v. State*, 105 Md.App. 45, 65, 658 A.2d 1122, 1132 (1995) (concluding that "[w]hatever else the third count may or may not have charged, it charged something other than the reckless endangerment of Rebecca Garnett and did not, therefore, redundantly charge the same offense already charged under the second count"), *on remand from State v. Albrecht*, 336 Md. 475, 649 A.2d 336 (1994), *rev'g Albrecht v. State*, 97 Md.App. 630, 632 A.2d 163 (1993).

or revoked and those subsections are simply different modalities whereby one might be without a license or privilege to drive.[5] *Id.* at 43, 723 A.2d at 920. The court focused on the appropriate unit of prosecution. Judge Moylan, writing for the court, asked: what is the fundamental criminal act the appellant was charged with having committed? The court concluded that the prohibited act is the driving on the public highway when one is not permitted to do so. *Id.* at 41–42, 723 A.2d at 919. It is the lack of the license, and not the reason for the lack of the license, that is the gravamen of the offense. The court said:

> The common denominator to all of the forms the offense may take is that a defendant drove a motor vehicle on a Maryland highway after his privilege to drive had been invalidated. The unit of prosecution is the act of driving.

*Id.* at 45, 723 A.2d at 921. We granted the State's petition for writ of certiorari to consider the merger question.

The common issues we must decide in these consolidated cases are whether the General Assembly in § 16–303 intended to create a single offense which can be committed in different ways or instead, intended to create several distinct offenses. If the General Assembly created distinct offenses, we must decide whether for sentencing purposes, the convictions merge.

## II.

Transportation Article § 16–303 ("Driving while privilege is canceled, suspended, refused, or revoked") reads as follows:

> (a) *Refused licenses.*—A person may not drive a motor vehicle on any highway or on any property specified in

---

5. The Court of Special Appeals cogently stated:
 We are not even tempted to try to grapple with the intimidating philosophical question of how one can suspend something that has earlier been revoked. When the privilege to drive is revoked, it thereby becomes non-existent. How, then, can one subsequently suspend nothing?
 *Tederick v. State,* 125 Md.App. 37, 45 n. 3, 723 A.2d 917, 921 n. 3 (1999). We likewise follow the same path.

§ 21–101.1 of this article while his license or privilege to drive is refused in this State or any other state.

(b) *Canceled licenses.*—A person may not drive a motor vehicle on any highway or on any property specified in § 21–101.1 of this article while his license or privilege to drive is canceled in this State or any other state.

(c) *Suspended licenses generally.*—A person may not drive a motor vehicle on any highway or on any property specified in § 21–101.1 of this article while the person's license or privilege to drive is suspended in this State.

(d) *Revoked licenses.*—A person may not drive a motor vehicle on any highway or on any property specified in § 21–101.1 of this article while the person's license or privilege to drive is revoked in this State.

(e) *Licenses canceled by other states.*—A person may not drive a motor vehicle on any highway or on any property specified in § 21–101.1 of this article while the person's license issued by any other state is canceled.

(f) *Licenses suspended by other states.*—A person may not drive a motor vehicle on any highway or on any property specified in § 21–101.1 of this article while the person's license issued by any other state is suspended.

(g) *Licenses revoked by other states.*—A person may not drive a motor vehicle on any highway or on any property specified in § 21–101.1 of this article while the person's license issued by any other state is revoked.

(h) *Licenses suspended under certain provisions of article.*—A person may not drive a motor vehicle on any highway or on any property specified in § 21–101.1 of this article while his license or privilege to drive is suspended under § 17–106, § 26–204, § 26–206, or § 27–103 of this article.

(i) *License suspended by another state for failure to appear or pay fine.*—(1) This subsection applies only to a person whose license or privilege to drive is suspended under the traffic laws or regulations of another state for:

(i) Failure to comply with a notice to appear in a court of that state contained in a traffic citation issued to the person; or

(ii) Failure to pay a fine for a violation of any traffic laws or regulations of that state.

(2) A person may not drive a motor vehicle on any highway or on any property specified in § 21–101.1 of this article while the person's license or privilege to drive is suspended under the traffic laws or regulations of any other state as described in paragraph (1) of this subsection.

(j) *Assessment of Points.*—(1) Except as provided in paragraph (2) of this subsection, any individual who violates a provision of this section shall be assessed the points as provided for in § 16–402(a)(28) of this title.

(2) Any individual who violates a provision of subsection (h) or subsection (i) of this section shall be assessed the points as provided for in § 16–402(a)(10) of this title.

Tederick and Jones make the same argument before this Court: that the gravamen of the crime is the act of driving. They argue that the Legislature intended to create a single offense, driving without a license or privilege to drive, which can be committed in alternate ways, not multiple offenses subject to cumulative punishments. In essence, their argument is that each separate driving episode while revoked and suspended may yield but one conviction, no matter how many times and how many ways the license or privilege to drive has been suspended. Their position before this Court is that one offense is not a lesser included offense of the other,[6] but

---

**6.** Jones and Tederick have abandoned any argument that driving while suspended is a lesser included offense of driving while revoked. The State, in its brief, also maintains that the lesser included offense doctrine is inapplicable to this case. For the purposes of these cases, and without deciding the issue, we will treat these offenses as each having separate elements and not merging under the "required evidence" test. *See State v. Lancaster*, 332 Md. 385, 391–392, 631 A.2d 453, 456–457 (1993) (defining required evidence test for merger of offenses as one which focuses upon the elements of each offense, noting that the test is that which is minimally necessary to secure a conviction for each offense).

rather, that they are two alternate means of committing the same offense.

In the alternative, they argue the offenses are separate offenses arising out of the same transaction for which the legislature did not intend multiple punishment. Jones and Tederick obviously recognize that whether the proscriptions are single or multiple offenses is a close question, and accordingly, they argue that where legislative intent is ambiguous or doubtful as to whether there may be multiple punishments for the same act, it will be resolved against turning a single transaction into multiple offenses. Finally, they argue that even if driving while suspended and driving while revoked are separate offenses, the statute itself, as well as the legislative history, give no indication that the Legislature intended multiple punishments for a single act of driving. At the very least, they suggest, the intent of the Legislature is ambiguous at best, and therefore, the rule of lenity operates to resolve the ambiguity in their favor.

The State argues, on the other hand, that for each separate traffic stop, a person may be charged with, and convicted of, separate charges for every active suspension and revocation. This multiple charging, it argues, furthers the Legislature's purpose in treating a person with multiple suspensions more harshly than a person with a single suspension.

The State's position is that the convictions do not merge under *any* theory of merger. Rejecting the Court of Special Appeals' concept of merger because the offenses are merely "redundant," the State argues that subsections (a) through (g) of § 16–303 are seven separate and distinct offenses establishing a variety of driving violations which may be punished separately. The State summarizes its argument as follows:

> [T]he fact that driving while revoked and driving while suspended are defined differently, are set forth in different subsections of § 16–303, are punished differently depending upon the reason for the suspension or revocation, and stem from differing policy considerations, compels the conclusion that there is no ambiguity as to the intent of § 16–303, and

that driving while revoked and driving while suspended are separate and distinct offenses which may be separately punished.

## III.

 The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution prohibits multiple punishments for the same offense as well as multiple trials for the same offense.[7] *Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977). Under the Double Jeopardy Clause, a defendant is protected against multiple punishment for the same conduct, unless the legislature clearly intended to impose multiple punishments. *See Missouri v. Hunter,* 459 U.S. 359, 365–69, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); *Whalen v. United States,* 445 U.S. 684, 688–89, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). Where the legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the same conduct, cumulative punishment may be imposed under the statutes in a single trial. *See Missouri v. Hunter,* 459 U.S. at 368, 103 S.Ct. 673. The Supreme Court has said that with respect to cumulative punishments imposed in a single trial, "the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Id.* at 366, 103 S.Ct. 673. The bottom line in resolving "the question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to impose." *Albernaz v. United States,* 450 U.S. 333, 344, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981). Maryland common law analysis leads to the same conclusion. Under common law principles,

---

7. The Double Jeopardy Clause protects "against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), *overruled on other grounds by Alabama v. Smith,* 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989).

merger follows as a matter of course when two offenses are based on the same act and are deemed to be the same under the required evidence test. *See Williams v. State,* 323 Md. 312, 318, 593 A.2d 671, 673 (1991). We noted the only exception in *Frazier v. State,* 318 Md. 597, 614–615, 569 A.2d 684, 693 (1990):

[E]ven if offenses are deemed the same under the required evidence test, the Legislature may punish certain conduct more severely if particular aggravating circumstances are present, by imposing punishment under two separate statutory offenses.

We first address the Court of Special Appeals' conclusion that the convictions for driving suspended and driving revoked subjected them to multiple punishment of the same offense in violation of their double jeopardy rights under the United States Constitution. Multiple punishment-same trial challenges generally arise in one of two broad contexts: (1) where a statute proscribes designated conduct and the issue is whether the defendant's conduct constitutes more than one violation of this prohibition, or (2) where two statutes or two portions of a single statute proscribe certain conduct, and the issue is whether the defendant can be punished twice because the particular course of conduct violates both proscriptions. *See Randall Book Corp. v. State,* 316 Md. 315, 324, 558 A.2d 715, 720 (1989); *Brown v. State,* 311 Md. 426, 431, 535 A.2d 485, 487 (1988) (quoting *Gore v. United States,* 357 U.S. 386, 393–94, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958)). "If the statute creates only one offense, double jeopardy principles would require that the same acts of the defendant not be subject to multiple punishments under the statute." *Biggus v. State,* 323 Md. 339, 343, 593 A.2d 1060, 1062, (1991).

This double jeopardy analysis is a two-step process. We determine first whether the charges arose out of the same act or transaction, and second, whether the crimes charged are the same offense. In these cases, there is no dispute that the charges arose out of the single act of unlawfully driving an automobile. The parties' points of reference differ, however.

The State focuses on the underlying reasons for the suspension and revocation; Jones and Tederick focus on the act of driving. The State maintains that because the revocation and the suspensions arose from separate incidents, the charges did not arise out of the same conduct. Jones and Tederick maintain that there is only one act or transaction because the charges arose from the single act of driving. In *Jones*, the State argues that because Jones's license was suspended for his failure to pay fines imposed for two traffic violations and his license was revoked for point accumulation, *driving* on August 12, 1997, is the one shared element of his two offenses. We interpret this argument to suggest that the two charges do not arise out of the same transaction.

We agree with Jones and Tederick that the charges arose out of the same act or transaction and that the focus is on the individual's conduct in driving a motor vehicle while suspended or revoked, and not the reasons underlying the legally operative suspension or revocation. The language of the statute ties the offense to the operation of the vehicle. We agree with Judge Moylan's remark in *Tederick* that

> [w]hat we should ask . . . is what is the fundamental *act* the appellant is charged with having committed. It is getting behind the wheel of an automobile, turning on the ignition, and driving onto the roadways of Maryland when one is not licensed to do so.

*Tederick*, 125 Md.App. at 43, 723 A.2d at 919 (emphasis added).

Although the charges arose from a single act, we nevertheless conclude that the offenses charged were multiple offenses. In determining whether the violations charged are the same offense, because the parties conceded that each offense requires proof of a fact that the other does not, we need not address the traditional required evidence test comparing the elements of each offense, set out in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). We accordingly assume, without deciding, that the *Blockburger* test is satisfied. This does not end the inquiry,

however, because the focus is upon the intent of the Legislature. *See Randall Book Corp. v. State,* 316 Md. 315, 323, 558 A.2d 715, 719–20 (1989) (noting that "[t]he *Blockburger* rule does not provide the final answer in cases involving multiple punishment because, when specifically authorized by the legislature, cumulative sentences for the same offense may under some circumstances be imposed after a single trial" (citing *Missouri v. Hunter,* 459 U.S. 359, 368–69, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983) and *Albernaz v. United States,* 450 U.S. 333, 343–44, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981))). As we said in *Randall Book Corp.,* 316 Md. at 324, 558 A.2d at 720 (1989), the multiple sentence-single statute problems "embrace a wide range of factual situations and statutory provisions. The key, of course, is legislative intent."

■■■■■ In seeking to ascertain legislative intent, we look first to the language of the statute, read in light of the full context of the statute and other external manifestations of intent or general purpose. *See Richmond v. State,* 326 Md. 257, 262, 604 A.2d 483, 485 (1992). We give the language of the statute its natural and ordinary meaning, keeping in mind the aim and objective of the statute. *See id.* We employ a common-sense approach in our analysis of the statute, seeking to avoid an illogical or absurd result. *See id.*

Maryland's laws regulating the operation of motor vehicles were first enacted in 1904. *See* 1904 Maryland Laws ch. 518, at 899 *et seq.* At that time, the Legislature required registration of vehicles and display of vehicle license numbers, established speed limits and certain rules of the road, and required drivers to file a declaration that they were competent to drive. The first requirement of an operator's license, for professional chauffeurs only, was passed in 1906. *See* 1906 Maryland Laws ch. 449, § 139A, at 822–23. The requirement that all operators be licensed followed in 1910. *See* 1910 Maryland Laws ch. 207, § 137, at 174–75. The position of Commissioner of Motor Vehicles was also created in 1910. *See id.,* § 131, at 169. The Commissioner was empowered to refuse a license to an applicant, and to revoke or suspend an operator's license,

after notice and a hearing, "for any cause which he may deem sufficient." *Id.,* § 139, at 175–76.

In 1916, the Legislature enacted a statute prohibiting, *inter alia,* the operation of a motor vehicle by any person whose licence to operate the motor vehicle had been refused, suspended or revoked. *See* 1916 Maryland Laws ch. 687, § 145, at 1592. The statute remained in basically the same form through subsequent recodifications until 1977, when the Transportation Article was created, *see* 1977 Maryland Laws ch. 13, at 21 *et seq.,* ch. 14, at 598 *et seq.,* ch. 307, at 2014–15, and when persons whose licenses had been canceled, suspended or revoked by other states were included. The law then read as follows:

> · A person may not drive a motor vehicle on any highway in this State while his license or privilege to drive is refused, canceled, suspended, or revoked in this state or a license issued by any other state is canceled, suspended, or revoked.

1977 Maryland Laws ch. 307, at 2015.

In 1986, the Legislature divided the statute and its prohibition against driving while one's license is suspended, revoked, refused, or canceled into separate subsections within § 16–303. *See* 1986 Maryland Laws ch. 472, at 1755–56. The stated purpose of this reorganization was to set out only one offense per section or subsection.[8] The House Bill 596 Committee Report reads as follows:

> LEGISLATIVE INTENT
>
> The intent of this bill is to renumber sections in the Transportation Article that contain multiple offenses.

---

8. The Legislature made other changes in 1986 to the Transportation Article. By amendment of § 16–303 and § 27–101, the penalty for driving while suspended based on insurance rejection, nonpayment of traffic fines and noncompliance with traffic citations was reduced from a maximum fine of $1000.00 and/or one year imprisonment to a maximum fine of $500.00 and/or two months imprisonment in order to eliminate jury trials for those offenses considered by the Legislature to be relatively minor. *See* Senate Judicial Proceedings Committee, Summary of Committee Report, House Bill No. 1607, at 1 (1986).

The purpose of the bill is to clarify the law so that District Court judges will know precisely with what offense an individual is charged.

The bill analysis continues:

> Under the Maryland Vehicle Law as currently written, *there are multiple offenses* contained in a single section or subsection. For example, Section 13–401 of the Transportation Article prohibits a person from driving a vehicle on any highway in this State and the owner from knowingly permitting it to be driven, if the vehicle is not registered or the required registration fee has not been paid, or if the registration is canceled, suspended, or revoked.
>
> A District Court judge does not get a copy of the citation when a traffic case comes before him for trial. All the judge has before him is a computer-printed docket. In the example given, if an officer charged a person with a violation of Section 3–401, the trial judge would not know whether the person appearing for trial was the driver or the owner of the vehicle or whether the vehicle was unregistered or the registration was canceled, suspended, or revoked.
>
> *The bill breaks up sections containing multiple offenses so that there is only one offense per section or subsection.* The purpose of the bill is to clarify the law so that District Court judges will know precisely with what offense an individual is charged.

Senate Judicial Proceedings Committee, Bill Analysis, House Bill No. 596 (1986) (emphasis added).

The State reads this history as support for the proposition that each subsection is a separate offense. Jones and Tederick, as might be expected, argue from the same legislative history that the statute created a single offense which could be committed in alternative ways.

We recognized in *Randall Book Corp. v. State*, 316 Md. at 324, 558 A.2d. at 720, that the cases addressing multiple punishment-single statute problems are not always easy to reconcile. For example, in *Satterfield v. State*, 325 Md. 148,

155–56, 599 A.2d 1165, 1168–69 (1992) we held that the possession of a hypodermic syringe, controlled paraphernalia under Maryland Code (1957, 1987 Repl.Vol.) Article 27, § 287 and possession of plastic baggies, controlled paraphernalia under certain circumstances under § 287, may be punished only as a single offense, while in *Cunningham v. State*, 318 Md. 182, 188, 567 A.2d 126, 129 (1989), we held that cocaine and heroin simultaneously possessed in separate quantities of each drug in the same bag may be separately punished as two offenses. *Compare State v. Walker*, 473 N.W.2d 221, 224 (Iowa App. 1991) (holding that single prosecution for one charge of driving while barred as an habitual offender and one charge of driving while suspended for failure to give proof of financial responsibility does not violate Fifth Amendment protection against double jeopardy) *with People v. Rodriguez*, 849 P.2d 799, 801 (Colo.Ct.App.1992) (holding that offense of driving while license denied, suspended or revoked is lesser included offense of driving after revocation prohibited as a habitual offender).

Although we recognize that the finding is a close one, we conclude that the statute creates separate offenses, for the following reasons.[9] The current statute and the offenses at issue carry distinct penalties and further different policy goals. Moreover, the suspension of one's license to drive may be lifted but at the same time, the license may remain revoked due to point accumulation. Under the Transportation Article, suspensions, revocations, refusals, and cancellations may be imposed for a variety of reasons. For example, the purpose is quite different between a suspension for failure to pay child support arrearages, suspension for committing driving offenses out-of-state, driving while under the influence of drugs and/or alcohol, failure to carry proper insurance, on the one hand, and revocation, for example, due to the accumulation of 12 or more points, on the other hand. The penalties vary as

---

**9.** Because we conclude that § 16–303 creates several and distinct offenses, we do not consider the unit of prosecution. *See Bane v. State*, 327 Md. 305, 316–17, 609 A.2d 313, 318–19 (1992); *Richmond v. State*, 326 Md. 257, 261, 604 A.2d 483, 485 (1992).

well. The maximum penalty for driving while one's license or privilege is suspended for failure to pay a fine under § 16–303(h) is a fine of $500.00 and/or two months in prison. *See* § 27–101(c)(13). The maximum penalty for a first offense of driving while one's privilege is suspended or revoked under § 16–303(c) or (d) is a fine of $1,000.00 and/or one year in prison. *See* § 27–101(h)(*l*). *See State v. Campbell,* 589 N.W.2d 705, 708 (Iowa 1999) (holding that multiple convictions per driving episode can be based on multiple suspensions if suspensions imposed under different statutes, such as suspension for failure to pay fines as well as suspension for failure to post proof of financial responsibility).

In the final analysis, what tips the scale in favor of the State is the express language in the bill analysis that the bill breaks up sections containing multiple offense so that there is only one offense per section or subsection. We reject the argument of Jones and Tederick that the recounted bill analysis and history had no application to § 16–303. Accordingly, Jones and Tederick were not convicted twice for the *same offense* in violation of the Double Jeopardy Clause of the United States Constitution.

## IV.

While we hold that driving while suspended and driving while revoked under § 16–303 are separate offenses, our merger inquiry is not at an end. We turn now to the question of whether Jones and Tederick may be punished twice when their conduct that triggered each charge was the same act, *i.e.,* the single act of driving, and whether the Legislature intended multiple punishment for conduct arising out of a single act or transaction which violates two or more statutes or subsections of the same statute. The Supreme Court has held that states may impose cumulative punishment if it is clearly the intent of the legislature to do so. *See Missouri v. Hunter,* 459 U.S. at 368–69, 103 S.Ct. 673. Under Maryland common law principles, the normal standard for determining whether one offense merges into another for sentencing purposes is what is referred to as the required

evidence test. Unlike the federal approach, *see Whalen v. United States,* 445 U.S. at 691, 100 S.Ct. 1432, under this Court's decisions, the required evidence test is more than simply another rule of statutory construction, but instead is a long standing rule of law to determine whether one offense is included within another when both are based on the same act or acts. *See McGrath v. State,* 356 Md. 20, 24, 736 A.2d 1067, 1069 (1999). Moreover, under Maryland law, the required evidence test is not the only standard for determining questions of merger. *See id.* at 24–25, 736 A.2d at 1069. Even where two offenses are separate under the required evidence test, there may still be merger for sentencing purposes based on historical treatment, judicial decisions which hold the offenses merge, fairness, and the rule of lenity. *See id.* Thus, we focus first on whether the Legislature intended punishment for multiple but distinct violations of § 16–303 stemming from one act of driving. Although violation of each subsection of § 16–303 constitutes a separate offense, we conclude that irrespective of the number of suspensions or revocations, the Legislature intended that punishment should be tied to the act of driving and only one sentence per driving episode be permitted.[10]

---

**10.** Cases in other jurisdictions are split, and, in the main, arise out of cases addressing the relationship between driving while one's license is suspended and driving while one's license is revoked, on the one hand, and habitual offender statutes, on the other hand. In *State v. Green,* 947 S.W.2d 186, 190 (Tenn.Crim.App.1997), the Tennessee court held that although the two offenses did not merge under the required evidence test, the single act of driving could not support multiple sentences because the purposes of the statutes were the same: to prevent dangerous drivers from continuing to drive. *See also State v. Campbell,* 589 N.W.2d 705, 708 (Iowa 1999) (holding that multiple convictions and sentences for one driving episode where charges were based on one suspension and extensions of it are not permitted; multiple convictions and sentences are permissible only if the suspensions have been imposed for different reasons). *But see Anderjeski v. City Court of the City of Mesa,* 135 Ariz. 549, 663 P.2d 233, 234–35 (1983) (holding that although the offenses of driving while intoxicated and driving with a blood alcohol level of 0.10 percent or more did not merge under the required evidence test, cumulative punishments were not permitted because there was no showing that the legislature intended to cumulate punishments); *People v. Rodriguez,* 849 P.2d 799, 801

The penalty provision, *see* § 27–101(h), ties the offenses to the operation of the vehicle, not the number of times the license has been suspended or revoked, as the Court of Special Appeals observed in *Tederick.* *See* 125 Md.App. at 45, 723 A.2d at 920. Although that court concluded that the Legislature intended but one offense, a view with which we disagree, we are in agreement that the Legislature intended to punish only the act of driving. For punishment purposes, why and how the license has been suspended or revoked is not relevant.

The legislative scheme establishing administrative penalties in § 16–402 detailing the number of points to be assessed for various violations, and § 16–402(b) limiting the assessment of points to the charge that has the highest point assessment supports our conclusion. Section 16–402(b) provides, in pertinent part, as follows:

> *Point assessment on multiple charge conviction.*—If a conviction occurs on multiple charges based on offenses alleged to have been committed at the same time or arising out of circumstances simultaneous in time and place, the Administration:
>
> (1) Shall assess points against the individual convicted only on the charge that has the highest point assessment; and
>
> (2) May not assess points on the remainder of the multiple charges.

The General Assembly has provided, in effect, that administrative sanctions dealing with points "merge" where a single act of driving violates more than section or subsection of the

---

(Colo.Ct.App.1992) (holding that driving while suspended or revoked is a lesser included offense of felony habitual offender statute); *Parks v. State,* 180 Ga.App. 31, 348 S.E.2d 481, 482–83 (1986) (holding that driving while suspended is a lesser included offense of violation of habitual offender statute); *State v. Redmon,* 425 N.E.2d 634, 636 (Ind.1981) (holding that driving while suspended or revoked is a lesser included offense of violation of habitual offender law); *State v. Moses,* 128 N.H. 617, 517 A.2d 839, 841–42 (1986) (applying the principle that driving while suspended or revoked is a lesser included offense of driving in violation of habitual offender order).

Transportation Article. It is not logical to assume that the Legislature intended multiple criminal sanctions for the same act but explicitly precluded multiple point assessments.

There is nothing in the subsections of § 16–303 to indicate that the Legislature intended multiple punishments for a single act of driving while both revoked and suspended. Neither § 16–303, nor the definitions of "suspend" and "revoke," *see* §§ 11–150, 11–164, nor the penalty provision applicable to § 16–303, *see* § 27–101(h), manifest an intent to authorize multiple punishments for a single act of driving.

In addition, the Legislature has established enhanced penalties for subsequent violations of the statute. Section 27–101(h) provides that:

Any person who is convicted of any of the provisions of § 15–502(a) of this article ("License required"), § 16–303(a), (b), (c), (d), (e), (f), or (g) of this article ("Driving while license is canceled, suspended, refused, or revoked"), § 17–107 of this article ("Prohibitions"), or § 17–110 of this article ("Providing false evidence of required security") is subject to:

(1) For a first offense, a fine of not more than $1,000 or imprisonment for not more than 1 year, or both; and

(2) For any subsequent offense, a fine of not more than $1,000, or imprisonment for not more than 2 years, or both.

We believe that this is a clear expression of legislative intent that persons convicted of multiple offenses during a single driving episode not suffer cumulative punishments. If a subsequent offense may not be punished by more than two years, it follows that cumulative or consecutive sentences for multiple violations of § 16–303 was not intended.

The State has argued that there is nothing in the Transportation Article to suggest that a defendant may not be separately convicted and sentenced under each subsection of § 16–303 for conduct arising out of a single act of driving. More particularly, because the public policies differ behind revocation and suspension in many instances, the Legislature intend-

ed to punish to the fullest extent those who violated separate provisions of the Transportation Article.

When we consider the State's argument along with Jones's and Tederick's argument, we believe that, at the very least, doubt exists as to whether the General Assembly intended such multiple punishment. Consequently, under the rule of lenity, this doubt must be resolved in favor of the accused. Where there is doubt or ambiguity as to whether the Legislature intended that there be multiple punishments for the same act or transaction, multiple punishments will not be permitted and for sentencing purposes, the statutory offenses will merge. *See McGrath*, 356 Md. at 25, 736 A.2d at 1069.

Ordinarily, where merger is based on the rule of lenity or other considerations, the offense carrying the lesser maximum penalty merges into the offense carrying the greater maximum penalty. *See McGrath*, 356 Md. at 25, 736 A.2d at 1069; *Miles v. State*, 349 Md. 215, 229, 707 A.2d 841, 848 (1998); *Williams v. State*, 323 Md. 312, 322, 593 A.2d 671, 676 (1991). Where merger is based on the required evidence test, the offense not having a distinct element merges into the offense having a distinct element. *See Williams*, 323 Md. at 322, 593 A.2d at 676. Here the offenses carry the same maximum authorized penalty, but it is nevertheless clear that driving while revoked is the more serious offense. Inasmuch as multiple punishments are not permissible under the circumstances herein, in *Jones*, we affirm the sentence for driving while revoked and remand to the Court of Special Appeals to vacate the sentence for driving while one's license or privilege is suspended. In *Tederick*, we affirm the judgment of the Court of Special Appeals.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS IN THE CASE OF RESPONDENT TEDERICK AFFIRMED. JUDGMENT IN THE CASE OF PETITIONER JONES AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE SENTENCE IMPOSED ON DRIVING ON A SUSPENDED LICENSE. WASHINGTON*

*COUNTY TO PAY COSTS IN THE CASE OF RESPON-
DENT TEDERICK. HARFORD COUNTY TO PAY COSTS
IN THE CASE OF PETITIONER JONES.*