
702 A.2d 1263

STATE of Maryland

v.

Richard Albert WHITE.

No. 13, Sept.Term, 1997.

Court of Appeals of Maryland.

Dec. 5, 1997.

Celia Anderson Davis, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen, on brief), Baltimore, for Petitioner.

John L. Kopolow, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for Respondent.

Argued before BELL, C.J., ELDRIDGE, RODOWSKY, CHASANOW, RAKER and WILNER, JJ., and ROBERT L. KARWACKI, Judge (retired), Specially Assigned.

WILNER, Judge.

The issue before us is whether the "single larceny doctrine" is alive and well in Maryland under the Consolidated Theft Statute (Maryland Code (1957; 1996 Repl.Vol.) §§ 340—345 of Article 27), enacted by the General Assembly in 1978. The single larceny doctrine addresses the question framed by us 104 years ago in *State v. Warren*, 77 Md. 121, 122, 26 A. 500 (1893): "Does the stealing of several articles of property at the same time, belonging to several owners, constitute one

offense, or as many separate offenses as there are different owners of the property stolen?" In *Warren,* we concluded that such stealing could constitute but one offense. We do not believe that the Legislature intended to change that result, or did change it, in enacting the Consolidated Theft Statute.

## FACTUAL BACKGROUND

The relevant facts in this case are not in substantial dispute. Carla Price and Patricia McNabb were physical education teachers at Western Vocational Technical High School in Baltimore County. They shared an office with two other teachers. On August 17, 1995, Ms. Price had a small portable television set in the office, sitting on top of a file cabinet. Just before 8:00 that morning, Ms. McNabb left a canvas bag in the office. The bag was decorated with a Baltimore County Teachers logo and contained some of her papers. When Ms. McNabb returned around noontime, she noticed that her bag was missing and the papers contained in it had been thrown into a box. The television set also was missing. Neither Ms. Price nor Ms. McNabb knew petitioner, Richard White, or had given him permission to be in the office or to take their property.

Around noon, Detective Edmond Bradley noticed petitioner standing on a corner some four blocks from the school, holding a small television set and turning it in his hands as if to see how it worked. He had a canvas bag between his feet. Bradley made a U-turn and approached petitioner, by which time petitioner had placed the television set in the bag. Bradley identified himself and asked petitioner for identification. He gave his name but had no identification. Perhaps because the canvas bag had a distinctive Baltimore County Teachers logo on it (or perhaps, as was revealed at the sentencing proceeding, because Detective Bradley knew petitioner and was aware of prior incidents involving him), Bradley called for assistance and dispatched another officer to the nearby school to see if a bag or television set was reported missing. When the officer radioed back that those items had

been reported missing, petitioner was arrested. The two teachers identified the items found in petitioner's possession.

On those facts, petitioner was charged in the District Court with separate counts of stealing a canvas bag from Ms. McNabb, having a value of $300 or less (Count I), stealing a television set from Ms. Price, having a value of $300 or less (Count II), and trespassing on posted school property (Count III). Upon his prayer for jury trial, the case was transferred to the Circuit Court for Baltimore County, where he was convicted on all three counts. Without objection from petitioner, the court imposed consecutive sentences of 18 months on each of the misdemeanor theft convictions and a concurrent 60-day sentence for the trespassing. In an unreported opinion, the Court of Special Appeals applied the "single larceny rule" and merged the two theft convictions but otherwise affirmed the judgments. We granted the State's petition for *certiorari* to consider whether the Court of Special Appeals erred in applying the doctrine and merging the two convictions. We shall hold that it did not and therefore shall affirm the judgment of that court.

## DISCUSSION

The single larceny doctrine has arisen principally in three contexts: (1) whether a count in a charging document alleging that the defendant stole the property of several persons at the same time charges more than one offense and is therefore duplicitous; (2) whether a prosecution, conviction, or sentencing for stealing the property of one person bars, under double jeopardy principles, the prosecution, conviction, or sentencing for having stolen the property of another person at the same time; and (3) whether, when the property of different persons is stolen at the same time, the values of the separate items of property may be aggregated to raise the grade of the offense or the severity of the punishment, to the extent that either is dependent on the value of the property taken. *See* Daniel H. White, Annotation, *Single or Separate Larceny Predicated upon Stealing Property from Different Owners at the Same Time*, 37 A.L.R.3d 1407 (1971). Accord-

ing to the annotation, "[t]he overwhelming majority of jurisdictions follow generally the so-called 'single larceny doctrine'; that is, that the taking of property belonging to different owners at the same time and place constitutes but one larceny," *id.* at 1409, and that, "[w]hile several jurisdictions at one time followed the separate larcenies doctrine, under which there was a distinct larceny as to the property of each person, most have abandoned that position in favor of the single larceny doctrine." *Id.* at 1410. Relying to a large extent on the pronouncements of this Court in *State v. Warren, supra,* 77 Md. 121, 26 A. 500, the author notes:

"Various rationales have been propounded in support of this position, perhaps the most common one being that such taking is one offense because the act of taking is one continuous act or transaction, and since the gist of the offense is the felonious taking of property, the legal quality of the act is not affected by the fact that the property stolen belonged to different persons.

Other rationales supporting the rule are concerned with the harshness of the punishment which might result from a contrary holding, or with the unconstitutionality of the double jeopardy to which a defendant would be subjected under a contrary decision."

White, *supra,* at 1409–10 (footnotes omitted).

The case law generally and the limited case law in Maryland support the conclusions reached by the author.

Early consideration of the single larceny doctrine, by some of the 17th and 18th Century English writers, was in the context of aggregating what would otherwise be several petty larcenies (those involving less than 12 pence) into a single grand larceny, *i.e.,* the third category noted above. Hale, for example, notes:

"If *A.* steal goods of *B.* to the value of six-pence, and at another time to the value of eight-pence, so that all put together exceed the value of twelve-pence, tho none apart amount to twelve-pence, yet this is held grand larciny, if he be indicted of them altogether [citations omitted].

But if the goods be stolen at several times from several persons, and each a-part under value, as from *A.* four-pence, from *B.* six-pence, from *C.* ten pence, these are separate petit larcinies, and tho contained in the same indictment make not grand larciny.

But it seems to me, that if at the same time he steals goods of *A.* of the value of six-pence, goods of *B.* of the value of six-pence, and of *C.* to the value of six-pence, being perchance in one bundle, or upon a table, or in one shop, this is grand larciny, because it was one entire felony done at the same time, tho the persons had several properties, and therefore, if in one indictment, they make grand larciny."

1 SIR MATTHEW HALE, *HISTORIA PLACITORUM CORONAE* 531 (1st Amer. Ed. 1847). *See also* 2 EDWARD HYDE EAST, A TREATISE ON THE PLEAS OF THE CROWN 740–41 (1806) (noting that "if the property of several persons, lying together in one bundle or chest, or even in one house, be stolen together at one time . . . the value of all may be put together so as to make it grand larceny . . . for it is one entire felony").

Hawkins, speaking also in the context of aggregation, stressed the requisite that the several takings occur at the same time: "[I]t seems to be settled, that the value of the property stolen must not only be, in the whole, of such an amount as the law requires to constitute grand larceny, but that the stealing must be to that amount at one and the same particular time; for things stolen at different times are, in fact, different acts of stealing; and no number of petit larcenies will amount to a grand larceny. . . ." 1 WILLIAM HAWKINS, A TREATISE OF THE PLEAS OF THE CROWN 150–51 (8th ed. 1824).

As noted, we first addressed the issue in *State v. Warren.* The question there arose principally in the first context mentioned above, whether a count in an indictment charging the defendant with stealing, at the same time, several sums of money belonging to different owners constituted the duplicitous joinder of two or more distinct and separate offenses. Warren was charged with two counts of theft, each accusing

him of stealing money belonging to one person, a pocket book belonging to a second person, and a pipe belonging to a third person. The trial court quashed the indictment on the ground that it was duplicitous, but we reversed. Although recognizing that there was then some conflict of opinion on the subject, this Court, relying, in part, on Hale and East, and "in fact [on] all the books, ancient and modern, in which the question has been considered," stated at 77 Md. at 122–23, 26 A. at 500:

"Upon principle, however, it would seem clear that the stealing of several articles at the same time, whether belonging to the same person, or to several persons, constituted but one offense. It is but one offense, because the act is one continuous act—the same transaction; and the gist of the offense being the felonious taking of the property, we do not see how the legal quality of the act is in any manner affected by the fact, that the property stolen, instead of belonging to one person is the several property of different persons.... And, although it is necessary to set out in the indictment the ownership of the property, this the law requires in order that the prisoner may be informed as to the precise nature of the offense charged against him; and further, to enable him to plead a former conviction or acquittal, in bar of a subsequent prosecution for the same offense. *So, it seems clear to us on principle, that the taking of several articles of property under such circumstances constitutes but one felony.*"

(Emphasis added.)

Upon that premise, we further concluded that the separate values of the individual items of property stolen may be aggregated in determining whether the offense constituted grand or petty larceny, noting that at common law "it was always held that where the aggregate value of the several articles stolen amounted to 12 d., whether belonging to the same person or to several persons, if taken at the same time, constituted grand larceny ... because it was one felony." *Id.* at 124, 26 A. 500. We thus dealt with the issue in the third context as well.

The precise issue of whether the taking of articles belonging to *different* persons at the *same* time has not been directly addressed in Maryland since *Warren.* In *Horsey v. State,* 225 Md. 80, 169 A.2d 457 (1961), we held that, when a person takes articles from the *same* owner at *different* times, a trial court may properly find that "the separate takings were pursuant to a common scheme or intent" and that, "if they are, the fact that the takings occur on different occasions does not establish that they are separate crimes." *Id.* at 83, 169 A.2d at 459. That was also the principle applied by the Court of Special Appeals in *Govostis v. State,* 74 Md.App. 457, 538 A.2d 338 (1988). The defendant there stole the victim's car and his clothing pursuant to a common scheme, leading the court to conclude that "there was but one criminal scheme and one criminal intent, thus one theft." *Id.* at 471, 538 A.2d at 345. On that basis, the court vacated a separate conviction for the stealing of the victim's clothes. Those cases obviously represent a different application of the single larceny doctrine, one that constitutes at least an extension of, if not a departure from, the early common law view.

In *Bane v. State,* 327 Md. 305, 609 A.2d 313 (1992), we commented on the doctrine in a footnote, although the case did not directly involve the doctrine, at least at the appellate level. The defendant there was charged with storehouse breaking and stealing, and the issue was whether separate convictions for that offense may be sustained "when but one breaking occurred, involving, however, two separate businesses, operated from offices located in the same building and separated from each other only by a hallway and unlocked and open doors." *Id.* at 306–07, 609 A.2d at 313–14.[1] As a preliminary matter, we held that the "unit of prosecution" under the storehouse breaking statute was "the individual storehouse

---

1. At trial, Bane was convicted of two counts of storehouse breaking and stealing $5 or more, one count of storehouse breaking with intent to steal more than $300, and two counts of theft over $300. The theft convictions were merged into the storehouse breaking convictions and therefore did not survive to the appellate level. Accordingly, we were spared the need to address directly the single larceny doctrine.

broken." *Id.* at 309, 609 A.2d at 315. That was not really the issue in doubt, however. The question was whether there could be more than one prosecution when the defendant, having broken into the exterior building, then entered more than one business unit located within the building—whether, in other words, the interior business units constituted separate storehouses for purposes of the breaking statute. Bane acknowledged that separate storehouses could exist within a single building but urged that, in the particular case, that was not the situation, given the physical layout of the two offices and the fact that they were not protected by any closed doors. His position was that there was but one storehouse.

The footnote in which we discussed the single larceny doctrine was in connection with that assertion. We noted that, in the Court of Special Appeals, the State had conceded that there was "a break-in of a single storehouse" and that Bane, in turn, had devoted a considerable part of his brief to a discussion of the single larceny doctrine. We said, in that regard:

"That rule provides that 'the theft of several articles at the same time constitutes but one offense although such articles belong to several owners.' *People v. Bauer,* 1 Cal.3d 368, 82 Cal.Rptr. 357, 363, 461 P.2d 637, 643 (1969). Although this Court has never directly adopted the single larceny rule, in *State v. Warren,* 77 Md. 121, 122–124, 26 A. 500 (1893), we recognized that, 'upon principle . . . it would seem clear that the stealing of several articles at the same time, whether belonging to the same person, or to several persons, constituted but one offense.' The Court of Special Appeals, on the other hand, relying on *Warren,* expressly adopted the single larceny rule in *Gavostis [Govostis] v. State,* 74 Md. App. 457, 471, 538 A.2d 338, 344 (1988).

The single larceny rule has been adopted by the majority of courts that have been presented with the issue [citations omitted]. Since the issue in this case is the proper unit of prosecution, a point on which the State and the petitioner certainly agree, we need not address the single larceny rule. If there was only one breaking, necessarily, there could be

but one conviction, whatever the amount of property taken and no matter where it was taken. Conversely, if more than one breaking occurred, then both convictions could be sustained, so long as property was taken in both breakings." *Id.* at 311 n. 4, 609 A.2d at 316 n. 4.

The balance of our opinion in *Bane* was devoted to the issue actually presented, as to which we held that "[u]nless it is objectively apparent that there are two or more storehouses in the building into which the defendant breaks, that one breaking can only constitute one violation of the statute." *Id.* at 316, 609 A.2d at 318. In that regard, we concluded that, when dealing with separate offices or units within a single building, only if the separate offices are "readily identifiable as such" as "to make it objectively apparent that they are separate" can they be regarded as separate storehouses. *Id.*

The issue considered in *Bane* has arisen, in other jurisdictions, in the context of the single larceny doctrine, but it is not before us in this case. The two items taken by White were taken from a single office in which there were no evident internal separations and no evident indications that the items belonged to different persons.

As we observed in *Bane* and as stated in the A.L.R. annotation, the overwhelming majority of States have adopted the single larceny doctrine. In *State v. Stoops,* 4 Kan.App.2d 130, 603 P.2d 221, 226 (1979), the Kansas court noted that, as of 1979, 34 out of the 35 States that had considered the question had adopted the doctrine. The doctrine itself is easily defined; we defined it well in *Warren.* As pointed out in *Richardson v. Commonwealth,* 25 Va.App. 491, 489 S.E.2d 697, 698 (1997), however, although "[t]he principles are easily stated and understood ... application of the doctrine becomes problematic when applied to the infinite variety of circumstances that can arise."[2] The doctrine is premised on the

---

**2.** The *Richardson* court viewed the "overriding principle" behind the doctrine as preventing the State from aggregating multiple criminal penalties for a single criminal act (489 S.E.2d at 700), which would certainly be true when applied in a double jeopardy context. Hale,

notion that the defendant's conduct, of taking several items of property at one time, constitutes a single criminal act. That, in turn, rests on the notion that the separate takings are all part of a single larcenous scheme and a continuous larcenous act, and, when the evidence suffices to establish that fact, directly or by inference, most courts have had no problem applying the doctrine. *See State v. Sampson,* 157 Iowa 257, 138 N.W. 473 (1912) (where, in one incident, defendant stole watch from one roommate and purse from another while they slept, one crime was committed; separate prosecutions not allowed); *Reader v. State,* 349 A.2d 745 (Del.1975) (where defendant broke into commercial building and stole property from three tenants, one theft occurred; separate prosecutions not allowed); *Richardson v. Commonwealth, supra,* 25 Va. App. 491, 489 S.E.2d 697 (stealing, at one time, two purses, belonging to different owners, from nurse's station in hospital constituted one theft; separate prosecutions not allowed); *People v. Fuentes,* 172 Ill.App.3d 874, 122 Ill.Dec. 780, 527 N.E.2d 152 (1988) (where defendant broke into house and stole property belonging to different persons from different rooms in house, only one theft was committed; separate prosecutions not allowed); *State v. Waller,* 280 S.C. 300, 312 S.E.2d 552 (1984) (where defendant broke into apartment and stole property belonging to three different persons, one theft committed; State could aggregate amounts to charge grand larceny); *State v. Myers,* 407 A.2d 307 (Me.1979) (where defendant broke into office and stole funds from three different entities; aggregation allowed); *Furnace v. State,* 153 Ind. 93, 54 N.E. 441 (1899) (count not duplicitous for charging theft

---

East, and Hawkins viewed the doctrine in quite different terms, as allowing the State to aggregate what would otherwise be several offenses carrying relatively minor penalties into a grand larceny, for which capital punishment was at one time possible. The same threat, though not the same range of severity, applies in Maryland today. One who steals property worth $300 or more faces 15 years in prison; one who steals property worth less than $300 faces a maximum of 18 months in prison. Md.Code, Article 27, § 342(f). To many thieves the single larceny doctrine has the potential for being more a menace than a shield.

from two different persons at same time); *Hearn v. State*, 55 So.2d 559 (Fla.1951) (stealing nine cows, belonging to different owners, from same field at same time constituted one theft; separate prosecutions not allowed); *Com. v. Donovan*, 395 Mass. 20, 478 N.E.2d 727 (1985).

The State makes a number of arguments in favor of our not applying the single larceny doctrine. Citing one Oregon case, *State v. Gilbert*, 281 Or. 101, 574 P.2d 313 (1978), the State urges that the "most appropriate" approach is to look at individual crime victims as the determining factor in imposing punishment for thefts of multiple items committed at the same time and place; i.e., to use the owner as the unit of prosecution. *Gilbert*, however, is not on point, as it was based on a statute, for which there is no counterpart in Maryland, that called for an owner-based unit of prosecution. Although the substantive theft law in Oregon was similar to that in Maryland, Oregon had another statute providing that, when the same conduct or criminal episode, though violating only one statutory provision, results in loss to two or more victims and the loss is an element of the offense, "there are as many offenses as there are victims." Or.Rev.Stat. § 131.505 (1973). The defendant was charged as a receiver of six stolen guns, each belonging to a different owner. The court held that the withholding of the six guns constituted the "same conduct," that it resulted in loss to six different persons, and that deprivation of possession was an element of the offense; *ergo*, under the statute, there were six offenses.[3]

The State next makes the curious argument that, even if we were to adopt the single larceny doctrine and not apply an owner-based unit of prosecution, the doctrine would not extend to the situation in which "a thief takes property belonging to more than one person." No authority is cited for that

---

**3.** The actual issue in *Gilbert* was double jeopardy. The defendant had been charged with six separate counts of theft, each involving one of the guns. He was tried on only one of the indictments and acquitted, following which the court dismissed the other five indictments on double jeopardy grounds. The appellate court reversed, holding, on the basis of the statute, that separate offenses were involved.

proposition, which flies directly in the face of both *Warren* and the general rule nationally. Citing *United States v. Marzano,* 537 F.2d 257 (7th Cir.1976), the State urges that the doctrine "is most applicable where the property taken is fungible and commingled such that it is not possible to determine ownership." State's Brief, at 8.

The State reads more into *Marzano* than is appropriate. The defendant there had broken into the vault of Purolator Security, Inc. and taken containers of money that belonged to, and were being stored for, six different banks. He was convicted of six counts of bank theft (18 U.S.C. § 2113(b)), one for each bank, and the issue was whether the multiple convictions could stand. The court noted, preliminarily, that a single occurrence may constitute multiple offenses if Congress intended that result. Without citing any authority, the court then simply concluded that, as Congress was concerned with protecting bank money, "[a] separate crime may be charged for each institution whose money is taken." *Marzano,* 537 F.2d at 273. The court went on to point out, however, that "[s]ince the money at Purolator was kept segregated in separate containers, there was no question as to whose money was taken and whose money was left as there would have been if the money had been commingled." *Id.* That being the only explanation provided by the court, it thus appears that the decision was based on the fact that the defendant knew that he was stealing the separate property of different banks and that Congress intended that the bank be the unit of prosecution.[4] Notwithstanding the contrasting reference to commingled money, there is nothing in the opinion to suggest that the court viewed the single larceny doctrine as limited to cases of commingled or fungible property. In any event, to the extent

---

4. It is interesting to note that the *Marzano* court acknowledged that "[r]obberies of multiple tellers within a bank are not separate takings within the meaning of the statute." 537 F.2d at 272. Obviously, if there is evidence that the Legislature intended for the taking of property from different owners to be separately punished, that intention will override the common law single larceny doctrine, notwithstanding that, in certain circumstances, it might raise double jeopardy concerns. *See,* for example, *Oddo v. United States,* 171 F.2d 854 (2nd Cir.1949).

that *Marzano* represents a rejection of the single larceny doctrine, it also represents a decidedly minority view.

Upon this analysis, we now make explicit what might otherwise have been implicit from *Warren*—that, although application of the doctrine may depend on the factual circumstances presented, the single larceny doctrine was a part of Maryland common law. The answer to the question framed in *Warren* is that, under pre–1978 Maryland common law, the stealing of several articles of property at the same time, belonging to several owners (or the same owner) *ordinarily* constituted one offense.[5]

■ Although the State suggests some public policy reasons why a single larceny doctrine should not be applied (without addressing any of the reasons identified by us in *Warren* as to why it should), the main thrust of the State's position is that "Maryland's theft statute precludes application of this common law doctrine." State's Brief, at 4. Two arguments are presented, one dealing with the wording of § 342(a) of Article 27 and the other arising from the manner in which the term "value" is defined in § 340(n). Section 342(a) provides:

> "A person commits the offense of theft when he willfully or knowingly obtains control which is unauthorized or exerts control which is unauthorized over the property of *the owner,* and:
>
> (1) Has the purpose of depriving *the owner* of the property; or
>
> (2) Willfully or knowingly uses, conceals, or abandons the property in such manner as to deprive *the owner* of the property; or

---

**5.** We stress the word "ordinarily," for we do not mean to foreclose the prospect of a different result where the facts clearly would have indicated that separate and distinct thefts were intended and accomplished. In such a circumstance, the different result would not arise from rejection of the single larceny doctrine but rather from a conclusion that it did not apply. *See State v. Stoops, supra,* 603 P.2d at 229.

(3) Uses, conceals, or abandons the property knowing the use, concealment, or abandonment probably will deprive *the owner* of the property."

(Emphasis added.)

The point sought to be made is that, by referring to the property of "the owner," in the singular, the Legislature intended for there to be "no impediment to separately charging, proving, and punishing thefts of items belonging to different owners." State's Brief, at 9. With that general proposition we have no quarrel. It does not, however, preclude continued recognition of the single larceny doctrine.

Theft, like common law and statutory larceny, is a property crime—the crime of depriving another person having a greater right to the possession of particular property of that property. The term "owner" was used in the statute, not to define the unit of prosecution, but merely to indicate "whose property a person may not obtain or exert control over." Joint Subcommittee on Theft Related Offenses, *Revision of Maryland Theft Laws and Bad Check Laws* (October 1978) p. 19 (Report). That term, sometimes used interchangeably with "another," was used as well, in the singular, in defining the common law crime. *See Worthington v. State*, 58 Md. 403, 405, 42 Am. Rep. 338 (1882) ("Simple larceny, which consists in the wrongful, or fraudulent, taking and carrying away, by any person, of the mere personal goods *of another*, from any place, with a felonious intent to convert them to the taker's use, and make them his property, without the consent of *the owner*, is an offence at common law"); *see also Murray v. State*, 214 Md. 383, 135 A.2d 314 (1957); *Putinski v. State*, 223 Md. 1, 3, 161 A.2d 117, 119 (1960) (larceny defined as the "fraudulent taking and carrying away of a thing without claim of right, with the intention of converting it to a use other than that of *the owner* "); *Fletcher v. State*, 231 Md. 190, 192, 189 A.2d 641, 643 (1963) ( larceny involves a felonious taking and carrying away "of the personal property *of another* with intent to deprive *the owner* of his property permanently"); *Brown v. State*, 236 Md. 505, 513, 204 A.2d 532, 536 (1964) (emphasis in descriptions added). Accordingly, we find no basis for con-

cluding that, in using the word "owner" in the singular, the Legislature intended a rejection of the single larceny doctrine.

The second branch of the State's statutory argument derives from the definition of "value." The core definition stated in § 340(n)(1) is the "market value of the property or service at the time and place of the crime, or if the market value cannot be satisfactorily ascertained, the cost of the replacement of the property within a reasonable time after the crime." There follow, then, specific provisions dealing with the value of written instruments ((n)(2)), the value of trade secrets ((n)(3)), and what happens when it cannot be determined whether the value is more or less than $300 ((n)(4)). The last clarifying provision in the definition, subsection (n)(5), states:

"When theft is committed in violation of this subheading pursuant to one scheme or continuing course of conduct, whether from the same or several sources, the conduct may be considered as one offense and the value of the property or services aggregated in determining whether the theft is a felony or a misdemeanor."

That provision obviously adopts, or at least permits a court to adopt, the single larceny doctrine for purposes of aggregation. The State infers that the General Assembly included such a provision only because, without it, each taking would be subject to separate prosecution and punishment. As the provision relates only to aggregation, however, the State posits that the Legislature did not intend for the single larceny doctrine to apply in any other context. We reject that analysis.

The Joint Subcommittee on Theft Related Offenses, which proposed and drafted the statute, explained the purpose of § 340(n)(5), in relevant part, as follows:

"Paragraph (5) of this subsection allows aggregation of the value of stolen property or services in order to determine whether theft is a felony or a misdemeanor. In this manner, the total value of the property or services which are stolen in any one scheme or continuing course of

conduct may be considered to decide if the cumulative amount taken warrants a misdemeanor or felony penalty. Although the value of property may be aggregated for the purposes of determining the potential penalty, the prosecution must still allege and prove each separate incident that is part of the aggregated offense.

The paragraph on aggregation was inserted on the basis that a person who steals property *at different times* from several persons and places as part of a continuing scheme has engaged in activity which is just as reprehensible as a person who steals an equal amount from a single person and place at one time. It is a marked departure from the common law which requires that property be stolen from a single person at a single time and place. For a general discussion of this provision see Model Penal Code sec. 206.15(3), Comment (Tent. Draft No. 2, 1954)."

Report, *supra,* at 27 (emphasis added).

This explanation clearly refutes the State's perception of the purpose of the aggregation provision. It was not to deal with the situation now before us, of a thief taking the property of several persons at one time, but rather, as stated, to allow aggregation where property is taken *at different times* from several persons and places, as part of a continuing scheme. That result clearly *is* "a marked departure from the common law," except to the extent, as in *Horsey v. State, supra,* 225 Md. 80, 169 A.2d 457, and *Govostis v. State, supra,* 74 Md.App. 457, 538 A.2d 338, "the separate takings were pursuant to a common scheme or intent." Section 340(n)(5) was not necessary to create or maintain the single larceny doctrine when, as here, the property of several persons is taken at the same time.

The fact is that there is nothing in the legislative history of the Consolidated Theft Statute even to suggest, much less to document, an intent by the General Assembly to abrogate the single larceny doctrine. The purpose of that enactment was clearly explained in the Joint Subcommittee's Report. The fine distinctions and nuances that had crept into the statutory

and common law of larceny over the centuries had created an "unwieldy and in some cases unintelligible body of statutory and case law." Report at 1. Following the suggestion of the Court of Special Appeals in *Farlow v. State,* 9 Md.App. 515, 265 A.2d 578 (1970), the Joint Subcommittee drafted and the General Assembly enacted a consolidated theft law "to eliminate these technical and absurd distinctions that have plagued the larceny related offenses and produced a plethora of special provisions in the criminal law." Report at 2. The purpose was to consolidate the disparate laws—to "create a single consolidated offense designated as 'theft' "—rather than to make tacit changes in the substance of the law not required to effect that consolidation.

We hold now that the doctrine exists as part of our theft law and that it applies in this case.

JUDGMENT OF COURT OF SPECIAL APPEALS AFFIRMED; BALTIMORE COUNTY TO PAY THE COSTS.