28 A.3d 164 (2011)
200 Md. App. 641
Marcus Antonio WASHINGTON
v.
STATE of Maryland.
No. 428, Sept. Term, 2010.
Court of Special Appeals of Maryland.
September 6, 2011.
*165 Brian M. Saccenti, (Paul B. DeWolfe, Public Defender, on the brief), Baltimore, MD, for Appellant.
*166 Gary E. O'Connor (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for Appellee.
Panel: DEBORAH S. EYLER, WOODWARD and PAUL E. ALPERT, (Retired, Specially Assigned), JJ.
DEBORAH S. EYLER, J.
A jury in the Circuit Court for Charles County convicted Marcus Antonio Washington, the appellant, of one count of driving without a license and two counts of fleeing or eluding police. The court sentenced him to 60 days for driving without a license, to be followed by consecutive, but suspended, sentences of one year for each conviction for fleeing or eluding police.[1]
In a single question presented, the appellant asks whether the sentencing court erred by imposing separate sentences for the two fleeing or eluding police convictions. We answer that question in the affirmative, and therefore shall vacate one such sentence.[2]

FACTS AND PROCEEDINGS
On March 24, 2009, Officer Eric Weaver of the Charles County Sheriff's Office was on patrol in Marbury. He was in uniform and driving a marked Sheriff's Office patrol car when he observed a vehicle being driven by the appellant on Chicamuxen Road. Officer Weaver was familiar with the appellant from prior encounters, and knew that he did not have a driver's license. Officer Weaver pulled his patrol car up behind the appellant's vehicle and followed him.
The appellant turned onto Sweetman Road, which at that location has a single lane in each direction and is divided by a double yellow line. Officer Weaver followed him and activated the flashing lights and siren on his patrol car. The appellant continued to drive without stopping. A truck was traveling immediately in front of him. As the line of vehicles neared Empire Place, the appellant sped around the left side of the truck, passing it briefly, and then turned left into a dirt driveway. Once on the driveway, he jumped out of his moving car and fled on foot.
Officer Weaver stopped his patrol car, exited, and chased the appellant down the dirt driveway, through a backyard, and between two houses. All the while, he was yelling for the appellant to stop. After losing sight of the appellant, Officer Weaver ran to a location where he could see the front doors of the two houses. The appellant's father opened the door to one of the houses and pushed the appellant outside, toward Officer Weaver, saying, "Here he is." Officer Weaver apprehended the appellant.
A dashboard camera in Officer Weaver's patrol car recorded the attempted traffic stop. At trial, the video of the attempted stop was played for the jury. Officer Weaver confirmed that the appellant was the person he saw driving the car that failed to stop, turning into the dirt road, jumping out of the car as it was moving, and then running away on foot.
The jury convicted the appellant as noted above. At the sentencing hearing, defense counsel argued that the two fleeing or eluding police convictions should merge for sentencing because "it appears to be one fleeing without any break in between." The State opposed merger. The court ruled that merger was not required, and *167 imposed separate sentences for each fleeing or eluding police conviction.
This timely appeal followed. We shall include additional facts as pertinent to our discussion of the issue on appeal.

DISCUSSION
Fleeing or eluding police is prohibited by Md.Code (1977, 2009 Repl.Vol.), section 21-904 of the Transportation Article ("TA"). Before summarizing the parties' contentions, we shall examine that statute in some detail. It appears in Title 21 of the Transportation Article, which establishes Maryland's "Vehicle Laws-Rules of the Road." Subtitle 9 of that title criminalizes "Reckless, Negligent, or Impaired Driving" and "Fleeing or Eluding Police." The penalties for these offenses and others are codified in Title 27 of the Transportation Article.
TA section 21-904 is divided into four subsections. Subsection (a) defines "visual or audible signal" to include "a signal by hand, voice, emergency light or siren." Subsection (b), entitled "Failing to stop vehicle," reads as follows:
If a police officer gives a visual or audible signal to stop and the police officer is in uniform, prominently displaying the police officer's badge or other insignia of office, a driver of a vehicle may not attempt to elude the police officer by:
(1) Willfully failing to stop the driver's vehicle;
(2) Fleeing on foot; or
(3) Any other means.
Subsection (c) is entitled "Fleeing on foot." It reads:
If a police officer gives a visual or audible signal to stop and the police officer, whether or not in uniform, is in a vehicle appropriately marked as an official police vehicle, a driver of a vehicle may not attempt to elude the police officer by:
(1) Willfully failing to stop the driver's vehicle;
(2) Fleeing on foot; or
(3) Any other means.
Subsection (d), entitled, "Attempts," prohibits a driver from committing a subsection (b)(1) violation (attempt to elude by willfully failing to stop vehicle in response to a signal from a uniformed officer) or a subsection (c)(1) violation (willfully failing to stop in response to a signal from an official police vehicle) "that results in bodily injury to another person" or "that results in death to another person." TA § 21-904(d)(1) and (2). Finally, subsection (e) prohibits a driver from committing a subsection (b)(1) or (c)(1) violation "while the driver is attempting to elude a police officer who is signaling for the driver to stop for the purpose of apprehending the driver for the commission of a crime of violence for which the driver is subsequently convicted." TA § 21-904(e)(2). (Part (1) of subsection (e) defines "crime of violence" by reference to Md.Code (2002), section 14-101 of the Criminal Law Article.)
In the case at bar, one of the appellant's fleeing or eluding convictions was for violating subsection (b)(2)a driver (the appellant) attempting to elude a uniformed police officer by fleeing on foot. The appellant's other fleeing or eluding conviction was for violating subsection (c)(1)a driver (the appellant) attempting to elude an official police vehicle by willfully failing to stop his own vehicle.
The appellant contends the trial court erred in imposing a sentence for the subsection (b)(2) violation and a separate sentence for the subsection (c)(1) violation. He maintains that, "it is obvious that the [appellant's] actions constituted a single and uninterrupted attempt to elude the police," pointing out that "[t]here was no *168 break between his failure to stop the vehicle and his fleeing on foot" and that, on the contrary, "the two overlapped." He argues that the General Assembly "did not intend to allow multiple punishments for a single attempt to elude police that violated § 21-904 in multiple ways."
The State responds that "the trial court properly imposed separate sentences for separate acts under separate statutory provisions." It takes the position that the appellant engaged in two separate acts: first he failed to bring his car to a halt in response to an official police vehicle that was signaling him (by lights and sirens) to stop, and then he bailed out and fled on foot from a uniformed police officer who was signaling him (by voice) to stop. It argues that the statute as written evidences an intention to penalize the different prohibited acts encompassed in its various subsections, and the appellant committed two of those acts. As the prosecutor put it at sentencing, in arguing against merger: "The defendant could have stopped [his] vehicle and not fled on foot. He chose to do both. The jury returned separate guilty verdicts on failing to stop his car and then bailing out and running on foot. They're two separate acts."
In a single prosecution, the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and the Maryland common law of double jeopardy prohibit the imposition of multiple penalties for the same offense.[3]Taylor v. State, 381 Md. 602, 610, 851 A.2d 551 (2004). The question here is whether multiple sentences were imposed upon the appellant for the same offense of fleeing or eluding police. To decide that issue, we employ a two-step double jeopardy analysis: "We determine first whether the charges arose out of the same act or transaction, and second, whether the crimes charged are the same offense." Jones v. State, 357 Md. 141, 157, 742 A.2d 493 (1999).

Were the Charges Based on a Single Act or Transaction?
The appellant takes the position that his convictions stemmed from a single transactionhis attempt to avoid being stopped and apprehended by the police. The State takes the contrary position, that each of the appellant's two convictions was based on a separate act: one act of failing to stop his car in response to lights and sirens on an official police vehicle; and a second act of fleeing on foot from a uniformed officer who was signaling him by voice to stop.
Purnell v. State, 375 Md. 678, 827 A.2d 68 (2003), and Jones v. State, 357 Md. 141, 742 A.2d 493, provide guidance on the question whether the events in this case constituted one act or transaction, or two. In Purnell, the defendant was convicted on two separate resisting arrest counts "[d]uring one episode of attempting to elude" two police officers who were trying to arrest him. 375 Md. at 681, 827 A.2d 68. The defendant had driven his girlfriend to a hospital after, during an argument, she had complained of chest pains. *169 At the hospital, the girlfriend told a nurse that the defendant had physically abused her, and asked for the police to be called. A police officer arrived and, after the nurse pointed out the defendant, approached him in the hospital waiting room. The defendant complied with a request to provide identification. After twice refusing a request to sit down, however, he pushed the officer into a wall, ran toward the hospital door, collided with a hospital police officer, and ended up "on the ground," skirmishing with that officer as he attempted to flee. The defendant managed to exit the hospital, with the two officers chasing behind him.
Bystanders saw the defendant run into the hospital parking lot and hide under a truck. They directed the officers to where he was. After the officers more than once commanded him to come out, and after they obtained the assistance of other police officers who had arrived on the scene, the defendant emerged. The officers then attempted to place him under arrest. He resisted their efforts to handcuff him, however, by trying to "push up," which required the officers to push him back down to put on the handcuffs. After more than one attempt, the defendant finally was handcuffed.
Ultimately, the defendant was convicted on two counts of resisting arrest, one for each officer who tried to arrest him and both based upon the events that took place in the hospital parking lot (not in the hospital). He was sentenced to ten years of incarceration for each conviction, with all but two years suspended, to be served concurrently.
On review before the Court of Appeals, the defendant argued that his conduct during the officers' attempts to arrest him was but a single act of resisting arrest and that his double jeopardy rights had been violated because multiple punishments had been imposed against him for the same offense of resisting arrest. The Court agreed, holding that the proper unit of prosecution for resisting arrest was "the arrest itself," not the number of officers the defendant was resisting during a single attempt to arrest him. The Court explained:
[T]he gist of the [defendant's] conduct was the unlawful resistance to the arrest the officers were attempting to effect. The [defendant's] conduct was continuous and uninterrupted and the officers had not abandoned their pursuit of [him]. . . . [T]he [defendant] was attempting to flee the hospital, but was not under arrest at that time. The factual support, found by the trial court, for the resisting arrest charges relates solely to the [defendant's] conduct in the parking lot. The trial court concluded specifically that "there was a resisting arrest, but not at the hospital, but at the parking lot" as to the first count, and that the second resisting arrest count was based upon, "again, . . . events at the parking lot and not the hospital." The [defendant's] physical refusal to submit to the officers' directives was uninterrupted. Moreover, there was no break, for any appreciable time, in the sequence of events, which could categorize the counts charged as separate and distinct acts.
Id. at 698, 827 A.2d 68.
In determining the unit of prosecution for resisting arrest, the Court looked to State v. Warren, 77 Md. 121, 122, 26 A. 500 (1893), in which it had adopted the "`single transaction' theory." 375 Md. at 696, 827 A.2d 68. In Warren, the Court held that when a defendant stole "at the same time, several articles of property belonging to several different owners," he was guilty of one offense, not of "as many offenses as there were owners." Id. The Purnell Court found persuasive the reasoning in *170 Warren, that because a criminal offense is against the public and therefore is prosecuted to vindicate public rights and to punish the offendernot in the name of or on behalf of the individual victims to vindicate their individual rightsthe
"gist of the offense [in Warren] . . . [is] the felonious taking of the property [the act itself]. We do not see how the legal quality of the act is in any manner affected by the fact, that the property stolen, instead of belonging to one person is the several property of different persons."
Id. at 696, 827 A.2d 68 (quoting Warren, supra, at 122, 26 A. 500, and citing State v. White, 348 Md. 179, 192, 702 A.2d 1263 (1997)).[4]
In Jones v. State, 357 Md. 141, 742 A.2d 493, each defendant driver in two consolidated cases was convicted of driving with a suspended license, in violation of TA section 16-303(c), and driving with a revoked license, in violation of TA section 16-303(d), based on one driving incident. In both cases, the driver's license suspension and his license revocation had come about for different reasons. In one case, the driver's license had been suspended because he had failed to pay a District Court fine and his license had been revoked due to an accumulation of points. In the other case, the driver's license was suspended for failure to comply with a child support order and his license was revoked due to an accumulation of points. Each of the drivers received separate sentences for his driving while suspended and driving while revoked convictions.
The Court of Appeals described the issue before it as whether "the General Assembly in § 16-303 intended to create a single offense which can be committed in different ways or instead, intended to create several distinct offenses"; and, if several distinct offenses were intended, do they merge for sentencing? 357 Md. at 152, 742 A.2d 493. The Court explained that, to answer the questions, it first had to decide for each driver whether the charges against him arose out of the same act or transaction. If so, it then had to decide whether the charged offenses were the same.
In addressing the first issue, the Court explained that the parties were approaching it from different perspectives. To be sure, for each case, there had been a single act of driving. The defendants saw that act as the only conduct on which their convictions were based. In contrast, the State saw the convictions as being based not only on the act of driving but also on the underlying acts that had brought about the license suspensions and revocations to begin with. Viewing the defendants' conduct from that perspective, the State argued that the driving while suspended and driving while revoked convictions, although arising out of single driving episodes, were not based upon the same conduct.
The Court of Appeals agreed with the defendants that their driving while suspended and driving while revoked charges "arose out of the same act or transaction." 357 Md. at 157, 742 A.2d 493. It explained: "[T]he focus is on the individual's conduct in driving a motor vehicle while suspended or revoked, and not the reasons underlying the legally operative suspension *171 or revocation. The language of the statute ties the offense to the operation of the vehicle." Id. at 158, 742 A.2d 493. The Court quoted with approval from this Court's opinion in one of the consolidated cases:
"[W]hat we should ask . . . is what is the fundamental act the [defendant] is charged with having committed. It is getting behind the wheel of an automobile, turning on the ignition, and driving onto the roadways of Maryland when one is not licensed to do so."
Id. (quoting Tederick v. State, 125 Md.App. 37, 43, 723 A.2d 917 (1999)).[5]
Purnell and Jones both support the conclusion that the two fleeing or eluding police charges in the case at bar were based upon the same conduct by the appellant. Just as the "gist" of the defendant's conduct in Purnell was the unlawful attempt to resist officers who were attempting to arrest him, the "gist" of the appellant's conduct here was the unlawful attempt to avoid being stopped by Officer Weaver by attempting to elude him. Although Jones differs somewhat from the case at bar, in that both charges in that case stemmed first from the single act of driving, and the multiple transaction arguments rested upon background conduct, the question the Court suggested should control militates in favor of there being a single act in this case. The "fundamental act the appellant [was] charged with having committed" was the act of trying to get away from Officer Weaver. To be sure, he did so by more than one means first by not stopping his car when being signaled to do so and then by ditching the car and fleeing on foot when being signaled to stop. But those discrete actions added up to a single uninterrupted and unbroken act of eluding the police.
Officer Weaver saw the appellant driving without a license, in violation of the law, and took action to stop him. From the time he activated the lights and sirens on his patrol car, until he apprehended the appellant in front of the appellant's father's house, Officer Weaver was on a single mission to stop the appellant. The appellant failed to stop, and the way in which he failed to stop morphed from not bringing his car to a halt in front of the officer's patrol vehicle to running away from the officer on foot. The entirety of what was occurring was a single attempt to stop/attempt to get away transaction. There was no lapse in time in which Officer Weaver ceased trying to apprehend the appellant and the appellant ceased trying to get away, only to have the attempt to stop and attempt to get away resume later.
Accordingly, for purposes of our double jeopardy analysis, the fleeing or eluding police charges against the appellant were based on one act or transaction.

Were the Convictions for the Same Offense?
"Under federal double jeopardy principles and Maryland merger law, the principal test for determining the identity of offenses is the required evidence test." Dixon v. State, 364 Md. 209, 236, 772 A.2d 283 (2001). The "required evidence test," also known as the "Blockburger test," see Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), is applied by determining whether the elements of one offense are completely subsumed by the elements of the other offense, so that one is the lesser included offense of the *172 other. As the Court of Appeals has explained:
The required evidence test focuses upon the elements of each offense; if all of the elements of one offense are included in the other offense, so that only the latter offense contains a distinct element or distinct elements, the former merges into the latter. Stated another way, the required evidence is that which is minimally necessary to secure a conviction for each [ ] offense. If each offense requires proof of a fact which the other does not, or in other words, if each offense contains an element which the other does not, there is no merger under the required evidence test even though both offenses are based upon the same act or acts. But, where only one offense requires proof of an additional fact, so that all elements of one offense are present in the other, and where both offenses are based on the same act or acts, [] merger follows [ ].
Abeokuto v. State, 391 Md. 289, 353, 893 A.2d 1018 (2006) (quoting McGrath v. State, 356 Md. 20, 23, 736 A.2d 1067 (1999), in turn quoting State v. Lancaster, 332 Md. 385, 391-92, 631 A.2d 453 (1993)).
Under the "required evidence test," TA subsections 21-904(c)(1) and (b)(2) cannot be considered the "same offense." One is not a lesser included offense of the other. The elements of subsection (c)(1) are 1) a police signal; 2) an official vehicle; and 3) the driver attempts to elude the officer by willfully failing to stop driver's vehicle. The elements of subsection (b)(2) are: 1) a police signal; 2) the officer in uniform; and 3) the driver attempts to elude the officer by fleeing on foot.
The required evidence test is the main, but not the only, test for deciding whether offenses are the same under a double jeopardy analysis. Even when offenses are not the same under the required evidence test, they still may be considered the same if the legislature did not intend that they give rise to separate punishments. See Jones, 357 Md. at 164, 742 A.2d 493. See also Brooks v. State, 284 Md. 416, 423, 397 A.2d 596 (1979) (citations omitted) (stating, "even though offenses may be separate and distinct under the required evidence test, courts occasionally find as a matter of statutory interpretation that the Legislature did not intend, under the circumstances involved, that a person could be convicted of two particular offenses growing out of the same act or transaction.").
In Whack v. State, 288 Md. 137, 143, 416 A.2d 265 (1980), appeal dismissed and cert. denied, 450 U.S. 990, 101 S.Ct. 1688, 68 L.Ed.2d 189 (1981), the Court explained:
[A]lthough the required evidence test is the normal standard for deciding the allowability of separate sentences, the Legislature may not in certain circumstances intend that separate sentences be imposed for two offenses growing out of the same transaction, even though the two offenses are clearly distinct under the required evidence test. On the other hand . . . even though two offenses may be deemed the same under the required evidence test, separate sentences may be permissible, at least where one offense involves a particularly aggravating factor, if the Legislature expresses such an intent.
See also Abeokuto, 391 Md. at 356, 893 A.2d 1018 (stating, "`where there is no indication that the Legislature intended multiple punishments for the same act, a court will not impose multiple punishments but will, for sentencing purposes, merge one offense into the other'") (citations omitted).
*173 We must decide, then, whether the General Assembly intended for there to be separate sentences imposed for two offenses growing out of the same continuous act of eluding the police under TA section 21-904. As the Court of Appeals explained in Jones, in undertaking such an analysis with respect to TA section 16-303:
In seeking to ascertain legislative intent, we look first to the language of the statute, read in light of the full context of the statute and other external manifestations of intent or general purpose. We give the language of the statute its natural and ordinary meaning, keeping in mind the aim and objective of the statute. We employ a common sense approach in our analysis of the statute, seeking to avoid an illogical or absurd result.
357 Md. at 159, 742 A.2d 493 (citations omitted). See also Kaczorowski v. Baltimore, 309 Md. 505, 513, 525 A.2d 628 (1987).
The offense of fleeing or eluding police is a statutory crime that was created by the General Assembly in 1970. Acts, 1970, ch. 534, § 1. The crime only can be committed by a driver. Like other crimes involving the use of a motor vehicle, it was codified in the article of the Maryland Code governing transportation, which at that time was article 66½. Entitled "Fleeing or attempting to elude a police officer," the offense appeared at section 11-904, which read:
Any driver of a motor vehicle who willfully fails or refuses to bring his vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police vehicle, when given visual or audible signal to bring the vehicle to a stop, shall be guilty of a misdemeanor. The signal given by the police officer may be by hand, voice, emergency light, or siren. The officer giving the signal shall be in uniform, prominently displaying his badge or other insignia of office, and his vehicle shall be appropriately marked showing it to be an official police vehicle.
Also at that time, section 17-101 of article 66½ established the penalties for misdemeanors under that article. Because section 11-904 specified that a violation was a misdemeanor, the penalty for a violation was governed by section 17-101, specifically, subsection (b), which called for a fine of no more than $1,000 or imprisonment for no more than six months or both.
Effective July 1, 1977, article 66½ was repealed and recodified in the new Transportation Article. Acts 1977, ch. 14, § 1. Former section 11-904 in article 66½ became TA section 21-904, entitled, "Fleeing or eluding police." As recodified, section 21-904 read:
(a) Scope of section.This section applies when a police officer gives a signal to stop, whether by hand, voice, emergency light, or siren, if:
(1) The police officer is in uniform, prominently displaying his badge or other insignia of office; and
(2) The police officer, when in a vehicle, is in a vehicle appropriately marked as an official police vehicle.
(b) Driver to obey signal.If given a visual or audible signal by a police officer to stop his vehicle, the driver of a vehicle may not attempt to elude the police officer, whether:
(1) By willfully failing to stop his vehicle;
(2) By fleeing on foot; or
(3) Otherwise, by any means.
The Revisor's note states, "This is new language derived from former Article 66½, § 11-904." Even though the context of the word "fleeing" in the original statute made plain that fleeing on foot was meant, the words "on foot" were added after "fleeing." *174 apparently to remove any doubt. Otherwise, with two exceptions, the original statutory language merely was changed in style, by reorganizing it into subsections and sub-subsections. The two non-organizational changes are pointed out in the Revisor's note. In the first, the language in subsection (a)(2) was changed to clarify that it applied only when an officer was in a vehicle, and not when an officer was on foot. In the second, the language stating that a violation of the statute was "a misdemeanor" was deleted. The latter change was made because, in the recodification, the new penalty section for the Transportation Articlesection 27-101specified that, unless otherwise provided, a violation of the Transportation Article constituted a misdemeanor. With that addition, it no longer was necessary for the fleeing or eluding police statute to state that a violation was a misdemeanor.
The "fleeing or eluding police" statute was amended in 1981 to replace the "and" between subsections (a)(1) and (a)(2) with an "or" and to substitute "whether or not in uniform" for "when in a vehicle" in subsection (a)(2). Acts 1981, ch. 471. Under the 1977 statutory language, a driver was obligated to obey a signal to stop when the police officer giving the signal was in uniform and, if the officer was in a vehicle, the vehicle was appropriately marked. The 1981 changes made clear that, if an officer was in a marked police car and gave a signal to stop, a driver had to obey the signal, regardless of whether the officer was in uniform. As summarized in the Fiscal Note for House Bill 1707, "[t]his bill provides that, when ordered to stop, a person may not attempt to elude the driver of a marked police car, whether or not that driver is in uniform." The reasoning appears to have been that the presence of official markings on the police vehicle, in and of itself, constituted sufficient notice to a driver to obey the signal to stop. The changes were effective July 1, 1981.
From that time on, there were no changes to the provisions of TA section 21-904 that are at issue in this case. Indeed, for the most part, the statutory changes after 1981 either were organizational or were additions for purposes of enhancing the sentence that could be imposed when fleeing or eluding resulted in bodily injury or death. A change in 1986, by Acts 1986, ch. 472, § 1, repealed and reenacted the statute in a reorganized form that made no substantive change:
(a) "Visual or audible signal defined."In this section, "visual or audible signal" includes a signal by hand, voice, emergency light or siren.
(b) Failing to stop vehicle.If a police officer gives a visual or audible signal to stop and the police officer is in uniform, prominently displaying the police officer's badge or other insignia or office, a driver of a vehicle may not attempt to elude the police officer by willfully failing to stop the driver's vehicle.
(c) Fleeing on foot.If a police officer gives a visual or audible signal to stop and the police officer is in uniform, prominently displaying the police officer's badge or other insignia of office, a driver may not attempt to elude the police officer by fleeing on foot.
(d) Attempting to elude police by other means.If a police officer gives a visual or audible signal to stop and the police officer is in uniform, prominently displaying the police officer's badge or other insignia of office, a driver may not attempt to elude the police officer by any other means.
(e) Attempting to elude police in official police vehicles.If a police officer gives a visual or audible signal to stop and the police officer, whether or not in uniform, *175 is in a vehicle appropriately marked as an official police vehicle, a driver of a vehicle may not attempt to elude the police officer by willfully failing to stop the driver's vehicle.
(f) SameFleeing on foot.If a police officer gives a visual or audible signal to stop and the police officer, whether or not in uniform, is in a vehicle appropriately marked as an official police vehicle, a driver of a vehicle may not attempt to elude the police officer by fleeing on foot.
(g) SameAttempting to elude by other means.If a police officer gives a visual or audible signal to stop and the police officer, whether or not in uniform, is in a vehicle appropriately marked as an official police vehicle, a driver of a vehicle may not attempt to elude the police officer by any other means.
Throughout this period of time (and as it remains today), the penalty for a violation of TA section 21-904 was set forth in TA section 27-101. In 1993, TA section 27-101(p), which specifically addressed that penalty, was amended to add subsections (2) and (3), imposing enhanced penalties for violations of TA section 21-904 resulting in bodily injury or resulting in death. Acts 1993, ch. 355.
TA section 21-904 remained the same from 1986 until 2005, when additional non-substantive, re-organizational changes were made that gave it the structure it has today. Acts 2005, ch. 482. What had been subsections (b), (c), and (d), addressing fleeing or eluding a uniformed police officer, were reorganized into subsections (b)(1), (2), and (3); and what had been subsections (e), (f), and (g), addressing fleeing or eluding an official, marked police vehicle, were reorganized into subsections (c)(1), (2), and (3). A new subsection (d) was added, addressing fleeing or eluding police that resulted in bodily injury or in death, thus moving that language from TA section 27-101 to TA section 21-904. The revision also applied to TA section 27-101, which was changed to refer to the bodily injury and death subsections of TA section 21-904. The result effectively was no change at all; there remained enhanced penalties for fleeing or eluding police that resulted in bodily injury or in death.
The last change to TA section 21-904, effective October 1, 2007, revised in a way not relevant to this case some language in subsection (d) and added subsection (e), which addresses fleeing or eluding a police officer who is trying to apprehend the driver for committing a crime of violence.
The current language of TA section 21-904 and the evolution in the language of the "fleeing or eluding police" statute from 1970 until the present strongly support the conclusion that subsections (b) and (c) of the statute, together with the definition of "visual or audible signal" in subsection (a), establish but one offensethat of attempting to elude a police officerbut specify various ways in which that offense may be committed.[6] Therefore, the appellant's two fleeing or eluding convictions are the *176 same offense, for which he cannot receive multiple punishments.
Again, subsections (b) and (c) now read:
(b) Failing to stop vehicle.If a police officer gives a visual or audible signal to stop and the police officer is in uniform, prominently displaying the police officer's badge or other insignia of office, a driver of a vehicle may not attempt to elude the police officer by:
(1) Willfully failing to stop the driver's vehicle;
(2) Fleeing on foot; or
(3) Any other means.
(c) Fleeing on foot.If a police officer gives a visual or audible signal to stop and the police officer, whether or not in uniform, is in a vehicle appropriately marked as an official police vehicle, a driver of a vehicle may not attempt to elude the police officer by:
(1) Willfully failing to stop the driver's vehicle;
(2) Fleeing on foot; or
(3) Any other means.
The statutory language reveals that the real distinction between subsections (b) and (c) does not concern the conduct of the driver/defendant; rather, it concerns the source of the police signal to stop. In subsection (b), the source of the signal is a uniformed police officer while in subsection (c), the source of the signal is an appropriately marked police vehicle. The behavior that may constitute fleeing or eluding police by a driver is the same in both subsections, and is not limited, as it can be carried out by "[a]ny other means." Thus, a driver can violate subsection (b) by willfully failing to stop his vehicle, fleeing on foot, or attempting to elude in any other way a uniformed officer who gives a signal to stop. Likewise, a driver can violate subsection (c) by willfully failing to stop his vehicle, fleeing on foot, or attempting to elude in any other way a marked police vehicle that signals him to stop. Thus, the conduct of the driver/defendant is not central to whether there has been a subsection (b) or a subsection (c) violation.
Indeed, in this case, the appellant could have been charged not only with subsection (b)(2) and (c)(1) violations but also with subsection (b)(1) and (c)(2) violations. This is not because there was any additional conduct on his part that was not covered by the charges as made. It is because the officer who was pursuing him happened to be in uniform and in a marked police vehicle. If Officer Weaver had been in a marked car but had not been wearing his uniform, the appellant could not have been charged with the subsection (b)(2) violationor any violation of subsection (b). He only could have been charged with violations of subsection (c). Likewise, if Officer Weaver had been in an unmarked car but in uniform (or in uniform but not in a car at all), the appellant only would have been subject to a subsection (b) violation, not a subsection (c) violation. And this is so based upon the exact same conduct in which the appellant engaged in this case failing to stop his car and then fleeing on foot. Offenses that are distinguished not by the conduct that they prohibit but by factors extrinsic to that conductsuch as the manner in which a driver/defendant is afforded notice of the obligation to obey are not different offenses. They are one offense that may be committed in more than one way.
As noted, the history of the fleeing or eluding police statute, recounted above, supports this conclusion. The original 1970 statute (article 66½, section 11-904) was one paragraph long and stated that the prohibited conduct constituted "a misdemeanor." The paragraph established the elements of the crime: a driver; willfully fails to stop or otherwise flees or *177 attempts to evade a police vehicle; when given an audible or visual signal to stop by a uniformed police officer whose vehicle is appropriately marked as an official police vehicle. The use of the singular"a misdemeanor"reflected an intention that the statute had created a single offense. The language also reflects, however, that from the inception the offense could be committed by a driver in three different ways: by willfully failing to stop, otherwise fleeing, or attempting to evade the police.
Although the statute expanded and contracted over the years, virtually all of the changes were organizational. The 1977 statute (TA section 21-904) did not make any substantive changes. It created subsections and clarified "fleeing" by adding "on foot." The 1981 changes to section 21-904 did not change or add to any of the conduct by a driver that could constitute a violation. As explained above, the substantive change made that year enlarged the circumstances in which a driver could be said to be on notice of a police signal that must be obeyed, by allowing such a signal to be made by a police officer in a marked vehicle whether or not that officer also was in uniform. The change was not intended to alter or expand the conduct on which a violation could be predicated. That is clear from the language in the fiscal note that accompanied House Bill 1707.
Subsequent changes in the structure of section 21-904 were made either to improve upon its organization or to allow for enhanced penalties for certain types of conduct already covered by the statute or added to the statute.
In Jones, the Court of Appeals concluded from its examination of the language of TA section 16-303, and the changes to that statute over the years, that the General Assembly intended to create multiple offenses within one statute, in particular, within certain subsections of the statute. The Court reasoned as follows:
The current statute and the offenses at issue carry distinct penalties and further different policy goals. Moreover, the suspension of one's license to drive may be lifted but at the same time, the license may remain revoked due to point accumulation. Under the Transportation Article, suspensions, revocations, refusals, and cancellations may be imposed for a variety of reasons. For example, the purpose is quite different between a suspension for failure to pay child support arrearages, suspension for committing driving offenses out-of-state, driving while under the influence of drugs and/or alcohol, failure to carry proper insurance, on the one hand, and revocation, for example, due to accumulation of 12 or more points, on the other hand. The penalties vary as well. The maximum penalty for driving while one's license or privilege is suspended for failure to pay a fine under § 16-303(h) is a fine of $500.00 and/or two months in prison. See § 27-101(c)(13). The maximum penalty for a first offense of driving while one's privilege is suspended or revoked under § 16-3039(c) or (d) is a fine of $1,000.00 and/or one year in prison. See§ 27-101(h)(1). . . .
In the final analysis, what tips the scale in favor of the State is the express language in the bill analysis that the bill breaks up sections containing multiple offenses so that there is only one offense per section or subsection. . . .
357 Md. at 162-63, 742 A.2d 493 (citation omitted).
None of those same considerations are implicated here. As we have explained, subsections (b) and (c) cover the same conduct of a driver/defendant, differing only in the source of the signal the driver/defendant is failing to obey. They carry *178 the same penalty, and advance a single policy goaldeterring attempts by drivers to flee or elude the police when signaled to stop. Essentially, the prohibited conduct has been the same since the statute first was enacted in 1970. The primary changes to the statute have been to enhance the penalties for a driver/defendant whose willful failure to stop his vehicle in response to a signal has resulted in bodily injury or death to another person and for a driver/defendant who attempts to elude a police officer who is trying to apprehend him for committing a crime of violence. These changes, prompted to be sure by policy considerations, were effected by adding new enhanced penalty subsections, not by changing the already existing prohibitions established in subsections (b) and (c).
Nothing in the language of subsections (b) and (c) or in the history of the changes to TA section 21-904 suggests that the General Assembly intended that offenders be punished separately for, in one incident of fleeing or eluding the police, attempting to do so in two different ways, for example, as here, by car immediately followed by on foot. We conclude, therefore, that fleeing or eluding police is one offense that carries one penalty, even though the offense may be carried out in more than one way in a single transaction. Here, the appellant committed one crime of fleeing or eluding the police. The fact that he committed that crime first by driving and not stopping and then by running and not stopping does not mean that he committed two crimes. For the single crime he committed, he only could be punished once. Accordingly, one of his sentences for fleeing or eluding police must be vacated.
SENTENCE ON COUNT 6 VACATED. JUDGMENTS OTHERWISE AFFIRMED. COSTS TO BE PAID BY CHARLES COUNTY.
NOTES
[1] The appellant also was convicted of one count of failure to drive right of center, but no sentence was imposed.
[2] The appellant appeared pro se at trial. At sentencing, he was represented by counsel.
[3] The Double Jeopardy Clause provides that no person shall "be subject to the same offence to be twice put in jeopardy of life or limb." U.S. Const., Amend. V. This constitutional guarantee is made applicable to the states through the Due Process Clause of the Fourteenth Amendment. State v. Long, 405 Md. 527, 535-36, 954 A.2d 1083 (2008) (citing Benton v. Maryland, 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969)). The Double Jeopardy Clause and the Maryland common law of double jeopardy also prohibit "the second prosecution for the same offense after acquittal" and "the second prosecution for the same offense after conviction for that offense." Taylor, supra, at 610, 851 A.2d 551. In this case, of course, there was but one prosecution.
[4] See also Huffman v. State, 356 Md. 622, 741 A.2d 1088 (1999) (unlicensed home improvement contractor who contracted with and performed work for seven customers over a 15-month period, with starts and stops between projects, violated Maryland business regulations seven times, not once); and Bane v. State, 327 Md. 305, 609 A.2d 313 (1992) (the unit of prosecution for storehouse breaking and stealing is the building that was broken into not the number of businesses in the building).
[5] As we shall discuss, the Court in Jones ultimately concluded that, while the charges were based on the same act, they were for multiple offenses, not the same offense, and therefore the sentences did not merge.
[6] Subsections (d) and (e) are, in effect, enhanced sentencing provisions. When subsection (d) applies, because bodily injury or death resulted from a driver willfully failing to stop his vehicle after a signal to stop by a uniformed officer or by an officer in a marked police vehicle, the driver/defendant is subject to an enhanced sentence under TA section 27-101(p)(2)-(3). Likewise, when subsection (e) applies, because a driver willfully failed to stop his vehicle after a signal to stop by a uniformed officer or a signal to stop by an officer in a marked police vehicle, and the police officer was attempting to stop the driver to apprehend him for commission of a crime of violence for which he subsequently is convicted, the driver/defendant is subject to an enhanced sentence.